In re John A. BETTS, Respondent.

Misc. No. S-89-43.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 8, 1990.

Frances C. Hulin, Asst. U.S. Atty., Danville, Ill., for petitioner.

John A. Betts, Marseilles, Ill., pro se.

Kenneth A. Kozel, LaSalle, Ill., for respondent.

## OPINION

RICHARD MILLS, District Judge:

We have at last reached the final chapter of this gothic tale, having found Respondent John Betts guilty of criminal contempt of this Court and sentenced him for that infraction.

This opinion, which shall serve as epilogue to this story, will reaffirm our earlier rulings in this case, as well as summarize the events leading to the denouement of this drama.

Betts, the main player of this saga, is himself an attorney. He was prosecuting, *pro se*, his own § 1983 action before Judge Baker of this district, when for some reason he decided to enlist the legal talents of his friend and fellow attorney, Kenneth Kozel, who thereupon appeared on Betts' behalf. During the course of that proceeding, though, Kozel ran afoul of Judge Baker—it was discovered that Kozel had never been admitted to practice in the Central District, and additionally Kozel appeared late to one court hearing and failed to appear at all to a second court hearing. As a result of these three infractions, Judge Baker referred the matter to the United States Attorney's Office which instituted criminal contempt proceedings against Kozel. Judge Baker recused himself from hearing the matter, as did Judge Mihm in Peoria, and so the case landed in this Court's lap.

Betts appeared as Kozel's attorney in that criminal contempt action. Betts, on Kozel's behalf, moved for this judge's disqualification, as he had for Judges Baker and Mihm. This Court considered that motion, and in furtherance of our considera-tion we entered an order on June 5, 1989, which set a hearing on the motion to be held on June 19, 1989, at 1:30 p.m. Notice of the order was mailed out the day it was entered.

June 19—the hearing date—came, but neither Betts nor Kozel did. Instead, the Court that day received a letter from Betts declining to attend the hearing because "I just simply am not available for that day regardless of how much I try to re-arrange matters. It had been my understanding from the previous time (May 9th) that you would rule by mail.... We assume that you do not have any questions for us or we would have heard from you in writing. We have nothing further to add." At the end of the letter, Betts concluded by stating, "Please let me hear from you if this causes any problem or inconvenience."

Betts' absence did, in fact, cause a "problem or inconvenience;" we issued a warrant for Respondent's arrest upon the Government's request for his failure to appear at a duly scheduled and noticed hearing of the Court. Specifically, Betts was charged with a violation of 18 U.S.C. § 401(3), wilful disobedience of a lawful order of the Court.

A warrant was also issued for Kozel's arrest, and he turned himself in on June 21 (just 2 days after the warrant was issued). On June 26, though, Kozel's warrant was quashed due to the fact that his presence at the hearing was not statutorily required and had not been provided for by the Court's order setting the hearing. Fed.R. Crim.P. 43(c)(3).

Betts' warrant was never quashed. Additionally, Betts was apparently well aware of the existence of the warrant, as evidenced by a newspaper interview with Betts in which he acknowledged notice of the warrant, but stated that he was just too busy to comply with it for several weeks. (The article, dated June 29, is filed as Document # 52 in the *Kozel* case, 89–20015.)

Betts apparently became free of his consuming affairs by mid-July, because he finally turned himself in on his warrant on

July 13. Bond was set for Betts at that time in the amount of $10,000 with a 10% cash deposit; the usual bond conditions applied, including a requirement that Respondent report to the Court, defense counsel, and the U.S. Attorney of any change of address or telephone number, and that he appear as required at all proceedings. With that, Respondent was once again set free to represent his client Kozel (who, in turn, represented Betts in the current matter).

On July 27, the Court held a hearing at which we ordered a separate file to be opened concerning the instant matter, so as not to confuse Betts' contempt charges with those of Kozel. Also at that hearing, during the course of a discussion with the Assistant United States Attorney handling the *Kozel* matter, the Court was advised that Betts' contempt was "remedial" in nature, and so should be considered a civil contempt rather than a criminal contempt. Accordingly, on August 1 this Court entered a Notice of Civil Contempt Charges, informing Respondent that he would be called upon "at a later time" to show cause why he should not be held in civil contempt for his failure to appear at that hearing. Otherwise, the instant matter was indefinitely postponed pending the conclusion of Kozel's case.

The *Kozel* matter finally came to fruition during the fall (Kozel was found guilty of two of the three charges), and so on November 7 this Court entered an Amended Notice of Civil Contempt Charges which set a Show Cause hearing on December 8. This Amended Notice fully superceded the previous Notice, and was filed and mailed out on November 7. Also on the 7th, pursuant to Betts' motion, this Court released and returned Betts' bond money deposited with the Court, but in no way did the Court otherwise amend the conditions of Betts' bond.

The December 8 Show Cause hearing date came, but once again Betts did not. Kozel did appear on Betts' behalf, though, and explained that he (Kozel) as Betts' attorney had not been provided any notice of the hearing until that very morning (and then only because Betts himself informed Kozel of the hearing). Additionally, Kozel explained that Betts was absent because a warrant was outstanding for his arrest which had been issued by a state court judge in Ford County, Illinois. Because Kozel had had little time to prepare for the hearing, we reset the hearing for December 28, after ordering Kozel to file an official entry of appearance on Betts' behalf so that he would receive notices concerning the case from the Clerk's Office.

Also on December 8, the Court realized an earlier error in designating Betts' case as one involving civil contempt, which would have been meant to coerce Betts into future obedience to the Court's orders, instead of criminal contempt, which would be used to punish Betts for his past misbehavior in the Court. *See Carbon Fuel Co. v. United Mine Workers of America,* 517 F.2d 1348, 1349 (4th Cir.1975). Accordingly, we entered on that date a Second Amended Notice of *Criminal* Contempt Charges, which fully superceded all previous Notices and set the new Show Cause hearing date for December 28. Additionally, this Court telephonically notified defense counsel that we had corrected our mistake in the moniker of the type of contempt.

Prior to the December 28 hearing date, Betts, through his attorney, filed a motion to disqualify the undersigned from hearing the criminal contempt case; this motion was denied. Among other things, the contempt with which this Respondent was charged did not "involve disrespect or criticism of a judge," within the meaning of Fed.R.Crim.P. 42(b), such as to require disqualification of this judge. *United States v. Nunez,* 801 F.2d 1260, 1265 (11th Cir. 1986); *In re Lamson,* 468 F.2d 551, 553 (1st Cir.1972). Betts also complained that he was entitled to a dismissal of the action due to a failure to comply with the Speedy Trial Act, 18 U.S.C. § 3161–3174. This motion, too, was denied because that Act only applies to "offenses" as defined by § 3172(2), which excludes any "Class B or C misdemeanor or ... infraction." Although § 401(3) violations are unclassified, as events have unfolded in this case it

would be classified as a Class C misdemeanor, and hence the Speedy Trial Act is inapplicable. Therefore, the Speedy Trial Act motion was denied as well.

Finally, the day of reckoning (December 28) came—but once again Betts did not. Enough was enough; a second warrant was issued for his arrest. Betts' attorney Kozel did appear at the hearing, and argued that Betts had not received personal service of the criminal contempt notice, but that personal service was required. Kozel cited no authority for this position, and the Court was unable to find any. To the contrary, all provisions of Rule 42(b) had been fully complied with at that point, and Betts had received actual notice of the December 28 hearing date (or, rather, he would have had actual notice had he accepted the Second Amended Notice sent to him by the Clerk's Office; instead, he—or someone at his address—scrawled "Return to Sender" on the envelope, slashed through his address and drew an arrow pointing to the return address). A respondent's actual notice is the key to compliance with Rule 42(b), *see United States v. Ray*, 683 F.2d 1116, 1125 (7th Cir.), *cert. denied*, 459 U.S. 1091, 103 S.Ct. 578, 74 L.Ed.2d 938 (1982), (citing *United States v. Eichhorst*, 544 F.2d 1383 (7th Cir.1976)). Also, by virtue of Rule 49(b) and (c), notices of orders need only be mailed, and service upon an attorney by mail is effective as service upon his client. *See* Rule 5(b) of the Federal Rules of Civil Procedure. Hence, personal service was not required.

At any rate, Betts' absence from our December 28 hearing was required whether or not we had served him with the Second Amended Notice of Criminal Contempt Charges in a procedurally correct manner, because the terms and conditions of his bond required his presence at any proceeding, and he had actual notice of the scheduled proceeding as noted above.

At the December 28 hearing, Kozel also again explained that Betts was absent due to being on the lam from that pesky Ford County state warrant; Betts feared surfacing in Springfield would jeopardize his freedom with respect to that state warrant.

That Betts could even consider offering that as an excuse for his absence is appalling. We would not countenance such behavior by any other criminal defendant in this Court, and we much less countenance it from Betts, a member of the bar of this Court. In short, his excuses wholly failed to move the Court, and so the warrant was issued.

Shortly thereafter, Betts, through his attorney, filed a Jury Demand. In its response, the Government indicated that it would not seek more than six months' imprisonment or a fine of more than $500, and therefore a jury trial would be unnecessary. *Frank v. United States*, 395 U.S. 147, 148, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). This Court agreed, and so we denied the Jury Demand, and the case proceeded to bench.

The U.S. Marshal finally caught up with Betts on January 18, somewhere in northern Illinois. He was transported back to Springfield forthwith, and a Show Cause hearing was held, with Betts finally gracing our presence, on January 23, 1990. The Government submitted evidence which made out a *prima facie* case, beyond a reasonable doubt, that this Court had entered an order of reasonable specificity which required Betts' presence at the hearing on June 19, and that Betts wilfully violated that order. *See United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir. 1989). Thereafter, it became encumbent upon Betts to satisfy the Court that his failure to comply with our order was in fact not wilful, but rather was subject to some reasonable excuse. *See United States v. Ferm (In re Gant)*, 547 F.Supp. 33, 34 (N.D.Ill.1982). In this vein, Betts argued that the order setting the June 19 hearing did not expressly require his presence, and since he had (he claims) nothing further to add at the hearing, he chose to waive his presence. Betts also argued that by virtue of Rule 43(c) of the Federal Rules of Criminal Procedure his presence was not required, and that he informed the Court by letter—which was received by the Court on the day of the hearing—that he would not attend; finally, Betts claimed that the administration of justice was in no way im-

paired by his absence because the Court ruled on the pending motions during the course of the June 19 hearing.

■ We consider first Respondent Betts' argument that no specific rule of this Court requires the presence of attorneys at duly scheduled criminal hearings. His contention that such hearings are mere "invitations" to attend, which can be waived *sua sponte* by the attorney himself, is nothing short of incredible. The clear implication of a notice of a hearing date is that the Court expects the parties—through their attorneys—to attend court to answer the Court's queries. And that clear implication is not diminished merely because the notice of hearing did not expressly require the attorneys' presence—if the Court had wanted an RSVP, we would have said so, and in our silence the attorneys' presence is required. Respondent somehow thinks that counsel are, or should be, in control of all courtroom procedures, and the Court a mere passive instrument to be strummed at the parties' whim. Respondent, though, is sorely mistaken—there can be only one black robe in a courtroom. Courts set hearing dates not merely to provide the parties the opportunity to make further arguments, but also because the judge may have further questions of counsel. Respondent's assumption "that [this Court does] not have any questions for us or we would have heard from you in writing," as conveyed in his letter to the Court, has no basis in any past practice of this Court.

Of course, we are not intractable with regard to court settings. Various avenues were open to the Respondent—for instance, he could have filed a motion to continue the hearing setting. Indeed, had the Court received his letter at some earlier time, we may have been able to treat it as a motion for a continuance and perhaps reset the hearing accordingly. Alternatively, Respondent could have filed a motion to cancel the hearing and for a ruling on the motion based on the pleading submissions, or he could even have telephoned the Court to determine whether his presence was necessary at the June 19 hearing. Respondent, though, did none of these things.

Instead, he sent the Court a letter dated June 16 (the Friday before the Monday court hearing), which was postmarked Saturday, June 17, and which of course the Court did not receive until the day of the hearing. Further, the letter was not in the form of a request to be absent from the hearing, but instead presumed to inform the Court that our hearing was not important enough for Respondent to attend. This was an outright, contemptuous affront to the Court. Hence, Respondent's arguments that his presence was not required does not convince us that his absence was not criminally sanctionable.

■ We may make quick work of Respondent's argument that Rule 43(c)(3) of the Federal Rules of Criminal Procedure rendered his presence at the hearing unnecessary. That rule, entitled "Presence of the Defendant," clearly states that "[a] defendant need not be present in the following situations: (3) At a conference or argument upon a question of law." The rule has no applicability to the defendant's attorney, and therefore does not apply to Respondent in these circumstances.

■ Respondent has also argued that the Government failed to prove that Respondent's failure to attend the hearing caused a delay in the administration of justice, and that therefore the criminal contempt conviction cannot stand. Respondent even argues that his failure to attend the June 19 hearing actually hastened the administration of justice by allowing the Court to rule on the motion to disqualify promptly, and that the Respondent's absence on June 19 was actually "a blessing in disguise" because it sped matters along. Respondent cites two cases in support of this contention: *United States v. Peterson*, 456 F.2d 1135, 1139 (10th Cir.1972), and *In re Williams*, 509 F.2d 949, 960 (2d Cir. 1975). Unfortunately for Respondent, though, these cases concern contempt proceedings brought under 18 U.S.C. § 401(1), making criminal "[m]isbehavior of any person in [the Court's] presence or so near thereto as to obstruct the administration of justice;" conversely, Respondent has been charged with a violation of § 401(3),

"[d]isobedience or resistance to [the Court's] lawful writ, process, order, rule, decree, or command." A conviction under this latter provision requires only a showing, beyond a reasonable doubt, that the Court entered an order of reasonable specificity, that the order was violated, and that the violation was wilful. *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir. 1989). That burden has been met here, and so Respondent's conviction shall stand. Moreover, even if "obstruction of justice" must be shown to make this conviction stick, we think Respondent takes a far too narrow view of that phrase when he applies it solely to his own case. Our docket, like most federal calendars these days, is teeming with both civil and criminal litigants, each of whom is entitled to some of this Court's time in administering justice. Because we were not apprised in advance that the June 19 hearing was unnecessary to Respondent, though, that time slot fell vacant of any substantive work. Wasting the Court's time *per se* obstructs justice.

■ Finally we reach the question of an appropriate sanction. Respondent has argued that a sentence of incarceration is not available here—instead only a fine can be levied—by virtue of 18 U.S.C. § 19, which provides that within Title 18 a "petty offense" is to be defined as any Class B or C misdemeanor or infraction for which a fine not to exceed $5,000 can be entered. Respondent argues that his was a "petty offense," as evidenced by this Court's refusal to grant him a jury trial, and that therefore § 19 limits our sentencing discretion to a fine only.

■ Once again, though, Respondent's arguments are stuff and nonsense. Respondent has been charged with and convicted of violating § 401(3), which is an unclassified crime within Title 18—notably, it is *not* classified as a "petty offense" within that title. Hence, the definition of "petty offense" found at § 19 has no applicability to this case. True, this is a "petty offense" in a constitutional sense inasmuch as no sixth amendment right to a jury trial exists in criminal prosecutions for "petty" offenses. *Frank v. United States*, 395 U.S. 147, 148, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). But "petty offense" within the meaning of *Frank* is not coextensive with that term's meaning in Title 18. Instead, a "petty offense" constitutionally can include sentences of up to six months for criminal contempt. *Frank* at 150, 89 S.Ct. at 1506 (citing *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966)). In short, although this is a "petty offense" within the meaning of the sixth amendment, it is not a "petty offense" for purposes of Title 18.

■ The Government has asked that we sentence Respondent to a straight 30 day jail term. Respondent has requested that we just consider the matter closed, or at best punish Respondent with a fine. After considering the arguments of the parties, though, the Court has determined that an appropriate sentence for this case is a sentence of 3 months' imprisonment, all but 15 days of which shall be suspended; additionally, Respondent has been sentenced to a term of supervised release of 6 months, and has been ordered to pay a mandated special assessment of $25.

We reached the above sentence notwithstanding Respondent's assertion that such a sentence may result in this Court being "justly ... accused of being petty, tyrannical and vindictive, both inside and outside of the legal community." Flattery will get Respondent nowhere. Admittedly this sentence would seem overly harsh as to an attorney who failed just once to appear at a duly scheduled hearing. And of course Respondent has only been convicted of one such failure to appear.

Other actions of the Respondent, though, are fully relevant when determining an appropriate sentence. 18 U.S.C. § 3661. We find it highly relevant that Respondent has *twice* utterly ignored our orders setting Show Cause hearings, and his excuse for ignoring those hearings (that he was avoiding capture on a state court warrant) figures into the mix as well. Indeed, Respondent's failure to appear at the December 8 and December 28 hearings amounted to violations of the terms of his bond, and

strongly suggest that he has learned nothing from these entire proceedings. We would little tolerate such behavior by any lay defendant in this Court, and we much less tolerate it from an officer of this Court such as Respondent. The cumulative effect of this disrespectful behavior requires severe punishment, and although the sentence meted out is not so severe as it could be, this Court believes it appropriate.

So, there you have it.

This whole affair started out with Respondent—Attorney John A. Betts—prosecuting his own civil action, and has escalated into two battles of wills between Respondent and his attorney and this Court; both attorneys lost. We sincerely hope that the proper lesson has been learned here, and that the moral of this story has not been lost upon Respondent.