**In the Matter of John A. BETTS, Respondent–Appellant.**

**No. 90–1280.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1990.

Decided March 19, 1991.

Patrick Kelley, Asst. U.S. Atty., office of the U.S. Atty., Springfield, Ill., for petitioner-appellee.

Kenneth A. Kozel, LaSalle, Ill., for respondent-appellant.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and PELL, Senior Circuit Judge.

BAUER, Chief Judge.

It is said that one good turn deserves another, but in the case of attorneys John Betts and Kenneth Kozel, this old saying took a strange direction. On January 29, 1990, Judge Richard Mills sentenced Betts to three months' imprisonment for criminal contempt. 730 F.Supp. 942. What makes this otherwise unnoteworthy event unusual is that Betts' contemptuous conduct occurred during the course of his representation of Kozel on a charge of criminal contempt. This somewhat "gothic" tale (in the

words of Judge Mills) began when Betts filed a Section 1983 claim in United States District Court for the Central District of Illinois and enlisted his colleague Kozel to represent him. Unfortunately (as it turned out) for both gentlemen, Kozel was not admitted to practice in this particular district. For this infraction of a local rule, as well as for failing to appear on one occasion and appearing forty minutes late on another, Kozel was ordered by the court to show cause why he should not be found in contempt of court.

Switching hats with his lawyer, Betts became the attorney of record in Kozel's criminal contempt action. One of his first moves was to file a motion for disqualification against Judge Mills, to whom the case had been assigned after two other federal district court judges had recused themselves from hearing the matter. The basis of the motion was that Judge Mills could not be impartial because he had initiated the contempt charge. Parenthetically, Fed. R.Crim.P. 42(b) provides that a federal judge shall be disqualified from presiding over contempt proceedings if the charge involves disrespect to or criticism of the judge, not the case here. On May 9, 1989, Judge Mills heard arguments on the motion for his disqualification and granted Betts leave to file a written memorandum of law in support of the motion. The judge indicated that he would rule as soon as possible, based on the arguments he just had heard and the parties' written memoranda.

On June 9, 1989, Judge Mills entered an order that provided that a hearing on the motion for disqualification was scheduled for June 19, 1989. Notice of the hearing was sent out to Betts and Kozel, but neither showed up on the appointed day. Instead, the court received a letter from Betts stating that he had other matters to which he had to attend, and that he had nothing to add to oral argument. Judge Mills received the letter in open court about thirty minutes before the start of the hearing. After listening to the government's argument, he denied the motion to disqualify. The government then moved for a warrant or order of arrest for both Betts and Kozel for willfully disobeying a lawful order of the court. See 18 U.S.C. § 401(3). Judge Mills granted the government's request and ordered federal marshals to bring the pair into custody. On June 21, 1989, Kozel turned himself in and briefly was held in lockup. He filed a motion to quash the warrant for his arrest, which was granted on the grounds that his appearance at the June 19th hearing had not been statutorily required and had not been provided for by the court's order setting the hearing. When Betts surrendered to federal marshals on July 13, 1989, his bond was set at $10,000. The usual bond conditions applied, including the condition that Betts appear as required at all future proceedings.

So as not to confuse Betts' contempt charge with that of Kozel's, the court issued a notice of civil contempt against Betts and postponed the matter until the resolution of Kozel's case. On September 6, 1989, Judge Mills tried Kozel in a bench trial in which he found him guilty of two charges of criminal contempt. The court's exasperation with Messieurs Kozel and Betts is evident from the transcript of the proceedings. Bemoaning the inordinate amount of court time that had been consumed, Judge Mills opined that he had "never seen a worse mountain made out of a molehill in [his] life," and that the two attorneys "have virtually gone ape over all of this business."

With Kozel convicted, Judge Mills was able to turn his attention back to Betts. On November 7, 1989, the court entered and mailed out an amended notice of civil contempt charges. The notice ordered Betts to appear on December 8, 1989, to show cause why he should not be held in civil contempt for his failure to appear on June 19, 1989, without the court's permission. December 8th rolled around and, once again, Betts was a no-show. Kozel, however, made an appearance and complained that he had received notice of the hearing only that morning. He explained his client's absence by stating that Betts was in hiding somewhere in the Chicago area to avoid arrest for a warrant outstanding in another county. Although not

important for our purposes here, that matter also involved a contempt charge against Betts. Betts and his wife were divorced in Ford County, Illinois. Betts filed a petition to enroll the dissolution of marriage decree in the Circuit Court of Cook County pursuant to the post-judgment venue provision of the Illinois Dissolution of Marriage Act. After a Ford County judge ordered Betts to dismiss the Cook County case and he refused, the judge found Betts in contempt, fined him $10,000, and ordered his arrest. Betts took it on the lam.

Judge Mills rescheduled the hearing for December 28, 1989, and took measures to insure that notice of any future hearing would be sent to Kozel in his official capacity as Betts' attorney. Not only did the court on December 8, 1989, send Kozel a written notice of the December 28th hearing, but in addition, on December 12th, Judge Mills' law clerk left a message on Kozel's answering machine to remind him of the date. A copy of the notice also was sent to Betts, but it was returned with a hand-printed notation on the unopened envelope, "Return to Sender." Also on December 8th, the court issued a second amended notice of contempt charges, and, for the first time, identified the charges as criminal rather than civil.

Betts (through Kozel) immediately filed another motion to disqualify Judge Mills for lack of impartiality. Betts and Kozel had stirred things up a bit in central Illinois by threatening, and then filing, a complaint to the Judicial Council of the Seventh Circuit stating that Judge Mills and another federal district court judge had received complimentary memberships in the Sangamo Club, an exclusive social organization in Springfield, Illinois. The complaints eventually were dismissed pursuant to the rules governing complaints of judicial misconduct on the ground that such memberships are permitted under the Judicial Code of Conduct. According to Betts' memorandum in support of the second motion to disqualify, Judge Mills was retaliating for the Sangamo Club affair. The court denied the motion, as well as a second motion to dismiss under the Speedy Trial Act. On December 23, Kozel sent the court a copy

of an article about Judge Mills that appeared in the December, 1989, edition of *Chicago Lawyer* entitled "City Slickers Beware: Judge Chops 'Em at the Knees." In the article, the judge is quoted as saying that "there is only one robe in the courtroom, and I'm wearing it."

On December 28, 1989, Kozel was in court for the hearing, but Betts was absent. The clash of wills between bench and bar evoked a strong reaction from Judge Mills. In particular, the court's hackles had been raised by Betts twice ignoring the court's orders and using as an excuse the fact that he was trying to avoid capture on the Ford County warrant. Judge Mills issued an angry order containing a warrant for Betts' arrest in which he stated that the court "would not countenance such behavior from any other defendant in this Court, and we do not countenance it from Betts—who is even less entitled to our countenance due to his status as an officer of this Court."

Betts was apprehended by federal marshals on January 18, 1990, and taken to the La Salle County Jail. He was held at the Metropolitan Correctional Center in Chicago, and transported to Springfield, Illinois by way of Terre Haute, Indiana for his January 24, 1990, trial. Betts renewed his motion to disqualify Judge Mills from conducting any future proceedings because of personal bias, and Judge Mills again denied the motion. When the case was heard, Betts had the burden of showing that his failure to comply with the court's order to appear was not willful, but rather explained by some good excuse. In defense, Betts argued that his presence had not been required, and that he had chosen to waive his presence at the hearing through his letter. The court was not persuaded. In an order dated January 24, 1990, Judge Mills chronicled his "troubles" with Betts. Topping the list was Betts' "absurd belief ... that court settings are mere invitations to appear before a court." The upshot was that Betts was found guilty of criminal contempt and sentenced on January 29, 1990. The court denied Betts' motion for bond pending sentencing because of his

"long history of flaunting [sic] this Court's settings and appearing only at his own convenience." Betts argued, and the court rejected, the argument that, because his conduct constituted a "petty offense" pursuant to 18 U.S.C. § 19, a prison term was improper. The court sentenced Betts to three months' imprisonment, with all but fifteen days suspended. In addition, Betts received a term of supervised release for six months, and was ordered to pay a special assessment of $25.

■ In his appeal of his criminal contempt conviction, Betts asks this court to reverse the judgment of the district court on various grounds. Two of his claims— that he was denied the right to a jury trial and that a jail sentence was improper—relate to his argument that he was convicted of a "petty offense." Section 19 of Title 18 of the United States Code provides that within Title 18, a "petty offense" is to be defined as a Class B or C misdemeanor or infraction for which a fine not to exceed $5,000 can be entered. Petty offenses, of course, may be tried without a jury. *Frank v. United States*, 395 U.S. 147, 148, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). Betts argues here, as he did in the district court, that because his was a "petty offense," the court had no discretion to sentence him to jail. Because the court actually did impose such a sentence, his argument continues, he should have received a jury trial. Betts' Brief succinctly summarizes the argument: "[I]f jail is in the picture, then a jury must be as well."

In the appeal from *his* criminal contempt case, Kozel made the same losing argument. There, we stated that "[n]othing in § 19 creates a statutory entitlement to a jury trial, for criminal contempt or any other crime." *United States v. Kozel*, 908 F.2d 205, 207 (7th Cir.1990). Any further claim to a jury trial must be based on Article III, § 2, and the Sixth Amendment of the United States Constitution. The relevance of these jury clauses in a trial for criminal contempt "turns on the severity of the sentence actually imposed." *Id.*; *Bloom v. Illinois*, 391 U.S. 194, 211, 88 S.Ct. 1477, 1487, 20 L.Ed.2d 522 (1968).

Betts received three months' imprisonment (mostly suspended), plus supervised release and a small fine. All things considered, the sentence was not too severe. In *Kozel*, we stated that, given the absence of a statute entitling a defendant to a jury trial in a criminal contempt case, "a sentence of six months' imprisonment or less (plus normal periods of probation ...) may be imposed without an opportunity for a trial by jury." 908 F.2d at 207. Like Kozel, Betts was not entitled to a jury trial.

■ Betts further complains that he was denied his right to effective assistance of counsel because his attorney, Kozel, was not given sufficient time to prepare for the December 28, 1989, hearing. He also protests the fact that he was denied bail. Both arguments are meritless and undeserving of further discussion. That leaves us with Betts' challenge to his contempt conviction itself. A federal court has the power and discretion to punish contempt of its authority, including acts of disobedience or resistance to its orders or commands. 18 U.S.C. § 401(3). To support a federal contempt conviction, "the government must prove: (1) that the court entered a lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful." *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir.1989) (citations omitted); *see also United States v. Kozel*, 908 F.2d 205, 208 (7th Cir.1990) (Sanctions for criminal contempt depend on proof of a willful violation of a lawful, definite, and specific court order.). Whether an order is reasonably specific "is a question of fact to be resolved with reference to the context in which the order is entered and the audience to which it is addressed." *Burstyn*, 878 F.2d at 1324.

■ Given the context here, a reasonable trier of fact could not have found that the evidence established, beyond a reasonable doubt, that Betts was guilty of criminal contempt for failing to appear at the June 19, 1989, hearing on his second motion to disqualify. The transcript of the May 9th status hearing on that motion contains Judge Mills' statement that the government's response to Betts' motion "is taken

under advisement and will be ruled upon of course when the briefs have been submitted. I guess technically I am not taking it under advisement at this point but I will at the time that the last brief is due." Based upon the judge's statement, Kozel apparently believed that when the final briefs came in, the court would have everything it needed to make a ruling on the motion. In the letter the court received just prior to the June 19, 1989, hearing, Kozel indicated that Betts would stand on the documents previously filed with the court and that he was waiving additional oral argument:

> I have received a notice from you regarding an additional oral argument in this matter for the 19th in Springfield. I just simply am not available for that day regardless of how much I try to re-arrange matters. It had been my understanding from the previous time (May 9th) that you would rule by mail.
>
> So that the administration of justice is not in anyway [sic] delayed, I would respectfully inform the court that my client has waived his right to be there and to present any additional matters before the court. Our position has already been presented thru prior oral argument and in the written matter submitted previously. We assume that you do not have any questions for us or we would have heard from you in writing. We have nothing further to add.

Betts had the right to waive oral argument on the 19th. He had argued the motion before, and had filed numerous supporting memoranda explaining his position. He also gave the court notice (granted, at the eleventh hour) that he would not be present and that he preferred to rest his case on the materials already in the court's possession.

■ Most important to our decision, the order that Betts allegedly flouted flunked the "reasonable specificity" test for disobeyed court orders in federal prosecutions for criminal contempt. The docket entry setting the June 19, 1989, hearing on the disqualification motion reads as follows:

6/5/89. Document No. 26. Order entered, fld., At the hearing of this matter held May 9, 1989, concerning Defendant's motion to disqualify, this Court allowed the parties time in which to file memoranda supporting their respective positions on the motion to disqualify. The parties have now submitted their memoranda. *Ergo,* this motion is set for a final hearing, to be held on Monday, June 19, 1989, at 1:30 p.m. (Mills, J.) Copy to all parties. Certified mail to Atty. Betts.

When an appearance is required, the court's language must be very direct. There should be no doubt or uncertainty as to what is meant. In *Burstyn,* the court issued an order commanding "every defendant and every lawyer" to be present for the first day of a criminal trial. 878 F.2d at 1326. The order thus "was reasonably specific and gave [defense counsel] ample reason to suspect that it applied to him personally." *Id.* Here, it is impossible to discern from the way the order is phrased that Betts' personal appearance was *required.* The court neither ordered the parties to appear for argument, nor did it indicate that Betts' presence was indispensable for it to render a decision. If a court order is ambiguous, "it precludes the essential finding in a criminal contempt proceeding of willful and contumacious resistance to the court's authority." *United States v. Joyce,* 498 F.2d 592, 596 (7th Cir.1974). Thus, it cannot be said that Betts' failure to appear at the June 19, 1989, hearing violated a court order, much less that the violation was willful.

The sight of an officer of the court being led away to jail does not make a pretty picture. Some attorneys—and, as we have seen over the past few years, even some judges—break laws and deserve prison sentences. Betts did not. We are certain that the antics of Betts and Kozel tried the patience of the court. In his February 27, 1990, order denying Betts' motion to stay judgment pending appeal, Judge Mills quoted from Shakepeare's *Henry IV,* Act III, scene 1: "Sometimes he angers me with telling me ... such a deal of skimble-skamble stuff as puts me from my faith." At a

time when courts have to engage in judicial "triage" to accommodate the frightening number of drug and other cases clogging their dockets, *see* Labaton, *Scales of Justice Off Balance*, N.Y. Times, Dec. 29, 1989, at A1, col. 1, Betts and Kozel papered several courts (including this one) with numerous filings that distracted us from more pressing matters. This, however, is not a punishable crime. Given the fact the June 5, 1989, docket order did not state that the presence of Betts was *de rigueur*, Betts' conviction and resulting sentence cannot stand.

Further, we note that this case is not moot even though the sentence has been served. In the case of an attorney convicted of criminal contempt of court, the conviction may have collateral consequences, such as action by the state attorney registration and disciplinary authority. *See United States v. Lee*, 720 F.2d 1049, 1054 (9th Cir.1983). Betts' conviction, therefore, is REVERSED, and the sentence VACATED.