**Guillermo CASTILLO,**
**Plaintiff–Appellant,**

**and**

**James Walker and Dean Engelbrecht,**
**counsel for plaintiff, Appellants,**

**v.**

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Burnham City Hospital, and City of Champaign, Defendants–Appellees.**

**No. 90–2802.**

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1991.

Decided July 30, 1991.

Rehearing Denied Sept. 20, 1991.

James G. Walker, Dean Engelbrecht, Bloomington, Ill., for Guillermo Castillo.

Lawrence R. Samuels, Jeffrey A. Berman, Jacquelyn F. Kidder, Ross & Hardies, Chicago, Ill., Robert C. Hofmann, Dougherty, Hofmann & Goodwin, Danville, Ill., for St. Paul Fire & Marine Ins. Co.

Glenn A. Stanko, Reno, O'Byrne & Kepley, Champaign, Ill., for Burnham City Hosp.

Steve M. Helm, Dukes, Martin, Helm & Ryan, Danville, Ill., for City of Champaign.

James Walker, pro se.

Dean Engelbrecht, pro se.

Before WOOD, Jr., and CUDAHY and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Chief Judge Baker labelled the behavior of plaintiff, a doctor, and his counsel "the most outrageous example of evasion and obfuscation that I have seen in years," and "a deliberate frustration of defendants' attempt to secure discovery." He sanctioned the doctor and both of his counsel, holding one in civil contempt. Thereafter Judge Baker dismissed the doctor's case with prejudice saying he was "truly sorry to be brought to this situation" finding it "most distasteful" and "an unfortunate duty." The doctor appeals, represented by attorneys James G. Walker and Dean R. Engelbrecht of James Walker, Ltd. of Bloomington, Illinois, the trial attorneys personally involved who also seek sanction relief in their own behalf. Objected to by the doctor and his counsel on appeal are the sanctions, the contempt and the dismissal. They also launch a counterattack. We affirm Judge Baker in all respects. The doctor and his attorneys' conduct which wasted much district court and attorney time

need not waste much more here. The issues will only briefly be examined.

The story begins when doctor Guillermo Castillo, a physician who enjoyed medical staff privileges at Burnham City Hospital in Champaign, Illinois, refused to increase his medical malpractice coverage to the limits required by the medical staff bylaws of the hospital. These new higher limits, a minimum of one million dollars per occurrence and three million dollars aggregate, were imposed to comply with an underwriting requirement of the hospital's malpractice carrier, St. Paul Fire and Marine Insurance Company.[1] The doctor's failure to comply resulted in the suspension of his medical staff privileges at the hospital. The doctor responded by filing this suit alleging violations of the Sherman and Clayton Acts, the Civil Rights Act of 1871, and the Illinois Antitrust Act, seeking declaratory and injunctive relief, damages, and attorney's fees.[2] Any possible merit those allegations might have is not directly at issue in this appeal.

■ Prior to the discovery problems the doctor sought to have the firm of Reno, O'Byrne and Kepley, P.C. of Champaign, Illinois, disqualified as attorneys for the hospital because the firm had represented the doctor in prior years in other matters. At that same earlier time the firm had represented the hospital as well. Judge Baker carefully examined the conflict charges after briefs and oral arguments. He found no substantial relationship between the firm's prior representation of the doctor and its present representation of the hospital. Largely the prior representation of the doctor was found to have been personal—such as the preparation of wills, profit sharing plans and trusts. There had been, however, some discussion about the doctor being a self-insurer, as the doctor did become, and of insurance plans. Judge Baker found those early attorney-client dis-

---

**1.** We have some appreciation of the problems doctors have with malpractice insurance and claims, but the conduct in this case was the wrong prescription for any ailment.

**2.** Count I was an antitrust claim brought under section 1 of the Sherman Act (15 U.S.C. § 1). Count II was an antitrust monopolization claim

under the Clayton Act (15 U.S.C. §§ 15, 26); Count III was a civil rights action under the Civil Rights Act of 1871 (42 U.S.C. § 1983); and Count IV was a pendent state claim under the Illinois Antitrust Act (Ill.Rev.Stat. ch. 38, paras. 60–1 *et seq.*).

cussions unrelated to the allegedly anti-competitive practices of the hospital in suspending the doctor from its staff. In any event, whatever relevant information might have passed from the doctor to his former counsel, now the hospital's counsel, was found by Judge Baker not to be of confidential nature, and was in any event easily discoverable. When Judge Baker made that ruling, however, he had no idea how difficult discovery would soon prove to be.

In the doctor's brief the only actual example of the claimed conflict which is cited is a verbatim section of the deposition transcript where defendants' counsel inquires about how long the doctor has been a professional corporation, whether his business expenses are run through the corporation, whether he is basically a paid employee of the corporation, whether he draws a salary, and a final question about whether his self-insurance is accomplished by maintaining a pool or if the doctor's professional corporation is deemed adequate for the purpose. Some of that information would be available from state records, some questions are almost self-answering, but in any event all properly discoverable, and obviously could not have been considered confidential information passed by the doctor to his then-at-torneys. The hospital attorneys' prior representation of the doctor in other matters gave the defendants no advantage or insight into his professional corporate affairs of any consequence. We have no basis to disturb Judge Baker's factual findings. If the district court's findings had been otherwise the doctor would, of course, have a legitimate and well-recognized complaint. *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221 (7th Cir.1978). In our view Judge Baker was correct in his assessment of this professionally sensitive situation.

Discovery then began and so did the trouble. In June 1989 each of the defendants, after considerable scheduling difficulties, undertook to depose Dr. Castillo, but did not get very far with it even though it took all day and 281 pages of transcript. The doctor was at this session represented by attorney Dean Engelbrecht, an associate of Walker. The session began by counsel objecting, without prior notice to defendants, to producing certain documents previously requested on the basis that the documents were irrelevant, duplicative, or a violation of physician-patient privilege. The doctor's counsel also made it plain that the requested documents would not be provided because he argued the hospital had itself previously refused to provide the doctor with the same types of documents. Counsel also stated that this was the last and only time the doctor would be made available for a deposition. In spite of this rocky beginning and without the previously requested documents, defendants' counsel proceeded.

After that, from time to time similar objections to questions followed. Sometimes there was a claim the question called for the doctor to speculate or give a legal opinion. If it was deemed irrelevant the doctor was also instructed not to answer in spite of Rule 30(c) requiring that evidence objected to shall be taken subject to objections. A number of questions for one reason or another did not get answered. When counsel for defendants tried to pursue a question which the doctor or his lawyer had tried to fence away the doctor's counsel charged harassment. Counsel, among other things, protected the doctor from answering questions about claimed damages, the meaning of letters the doctor had signed, and other questions related to the allegations of the complaint. The objections were on the basis that the doctor was not a lawyer and the letters and complaint, although signed by the doctor, had been composed by his present counsel. The questions called for legal conclusions or violated the privilege, it was claimed. Then followed some discussion about whether the deposition would have to be of the doctor's counsel. The doctor, however, needed little protection by his counsel as he was very adept at evading the questions, giving unresponsive answers and stone-walling.

Judge Baker fully reviewed the deposition objections after defendants filed motions to compel discovery and to require answers from the doctor. He found no

merit in the particular objections whether for relevance or privilege or otherwise. Even if some particular question may have had some basis for an objection, that would not cure the overwhelming and continuing abuse of the discovery process by the plaintiff and his counsel throughout much of the deposition.

■ After reading the deposition, this court fully agrees with Judge Baker. It is plain, as Judge Baker said, that the doctor's counsel was engaged in a "deliberate frustration of defendants' discovery attempts." As a result of that conduct Judge Baker assessed fees and expenses of $6,317.66 divided equally between the doctor and his counsel. That assessment was fully warranted. A district judge has wide discretion in these discovery matters and we will not disturb the rulings absent a clear finding of abuse of discretion, *Brown–Bey v. United States*, 720 F.2d 467, 470–71 (7th Cir.1983), and there was none.

■ As some of the deposition questions therefore had not been answered, Judge Baker directed that they forthwith be answered without interference from the doctor's counsel. A further effort was made to depose the doctor. This time it was attorney James Walker who appeared with the doctor, but this lawyer substitution did not improve the situation. Attorney Engelbrecht was also present. As Judge Baker later found and as is evident to us from the deposition, the doctor's counsel willfully and contumaciously disobeyed the court's order by interfering with the questions posed by defendants' counsel, and by directing the doctor not to respond to certain questions already approved by the court. The only issue of any possible consequence was the challenge to the questions allegedly on the basis of attorney-client privilege which, if answered, might waive the privilege. Judge Baker found, however, that few if any of the objections on the basis of privilege had any merit. We fully agree with that assessment. These repetitious obstructive tactics clearly deserved sanctions.

■ One remarkable incident occurring at this second deposition deserves telling. The deposition this time was being taken in attorney Walker's offices in Bloomington, Illinois. At another impasse, counsel for the hospital suggested that the differences between counsel be resolved by an immediate telephone conference with Judge Baker, a procedure Judge Baker had recommended. Attorney Walker did not immediately respond to the suggestion and hospital counsel therefore indicated he would go ahead and place the call. Then attorney Walker did respond:

MR. WALKER: I would caution you not to use any telephones in this office unless you are invited to do so, counsel.

MR. STANKO: You're telling me I can't use your telephones?

MR. WALKER: You can write your threatening letters to me. But, you step outside this room and touch the telephone, and I'll take care of that in the way one does who has possessory rights.

When these deposition problems later came before Judge Baker he was not sure whether attorney Walker had actually threatened and intended physical violence or not. Attorney Stanko, the hospital counsel, advised the court that he had felt no fear of physical violence. Be that as it may, that exchange remains an example of professional incivility, a situation of general concern in this circuit and elsewhere.[3]

Judge Baker found that attorney Walker's arguments and statements were capricious and aimed at stymieing the defense efforts to find out through discovery what the doctor's case was about. The court's order which was intended to avoid a repeat of the prior deposition problem had been ignored. The proceedings had been unreasonably and vexatiously prolonged in violation of 28 U.S.C. § 1927. Attorney Walker was also subject to sanctions under Rule 16 and Rule 37(b). The doctor's case was thereupon dismissed with prejudice and attorney Walker was found to be in civil contempt. Dismissal of a doctor's case for conduct similar to this is not unknown to us. *Godlove v. Bamberger*, 903 F.2d 1145

**3.** Interim Report of the Committee on Civility of the Seventh Federal Judicial Circuit, April 1991.

(7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1123, 113 L.Ed.2d 230 (1991). The contempt, it was provided, could be purged by paying the expenses and fees of the defense. In addition, Judge Baker, after a hearing on a rule to show cause, concluded that attorney Walker's conduct was so unprofessional that it required referral to the other two judges in the district to determine the appropriate discipline, if any, including reprimand, censure, suspension, disbarment, or whatever might be found to be just.

The doctor in return filed a Rule 59 motion to reconsider, reverse, alter or amend the judgment, and also sought Rule 11 sanctions against the hospital, all viewed by Judge Baker as without merit and merely retaliatory for sanctions imposed on the doctor and his counsel. All motions were denied including also a motion by defendants for Rule 11 sanctions against plaintiff and his counsel for certain antitrust allegations in the complaint. Fees and costs totalling $5,085.50 were later allowed to defendants as part of the discovery sanctions.

■ The doctor had also sought Rule 11 sanctions against the defendant St. Paul Fire and Marine Insurance Company. One of the counsel for the company, Jacquelyn F. Kidder, had not been admitted to practice in the Central District and was therefore unauthorized to practice there. Judge Baker construed the local rule not to require admission to practice in order merely to take a deposition. In addition to taking the deposition of the doctor, Ms. Kidder had also participated in a teleconference and signed a pleading—the company's motion to dismiss. That matter, however, was argued, not by her but by the company's lead counsel and local counsel, both of whom had been admitted. This sanction motion was denied following the reasoning of *Zambrano v. City of Tustin,* 885 F.2d 1473 (9th Cir.1989). That court held negligent failure to secure local admission did not justify sanctions for violation of a rule generally regarded as a technicality absent a showing of bad faith, recklessness or wilfulness. *Id.* at 1480. That requisite showing was not made in this case. It was at most negligence. The doctor's effort was seen by Judge Baker as but another retaliatory effort.

The doctor refers us to another case of Judge Baker in which it is claimed Judge Baker took a contrary position. *In re Betts,* 730 F.Supp. 942, 943 (C.D.Ill.1990), *rev'd on other grounds,* 927 F.2d 983 (7th Cir.1991). It can be seen in that case that there was more to it than an attorney not having been admitted to practice in the district. He was charged also with being forty minutes late for court on one occasion and also with failure to appear on another after having been ordered to appear to show cause why he should not be held in contempt. It was all in very unique context. That case is an interesting and involved "gothic tale," 730 F.Supp. at 943, but of no help to the doctor.

We find no abuse of discretion in Judge Baker's treatment of the doctor's sanction motion and any finding of fact in regard to it was not "clearly erroneous." *Magnus Elec. v. Masco Corp.,* 871 F.2d 626, 629 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989). We also view the doctor's motion as nothing but a strained effort to retaliate. In any event, these charges the doctor raises about defense counsel had nothing to do with the dismissal of his case for discovery abuse and therefore render them of no moment.

We find this unfortunate situation as professionally disagreeable as did Judge Baker. The doctor and his counsel fully deserve the sanctions imposed and leave no alternative but to affirm the district court in all respects.[4] Hopefully we will be spared further cases of this nature which only thwart and disrupt our judicial processes to the detriment of all concerned.

---

**4.** This case, by reason of the sanctioned conduct, may cast some shadow over the professional standing of attorneys Walker and Engelbrecht, but that is not the intent of this court. We are judging only this one case, and as unfortunate as it was, this opinion should not be read expansively to generally tarnish the professional reputations of these attorneys, which not knowing differently, we may assume are otherwise good.

Where Judge Baker exercised his discretion he did so carefully and without abuse. It would only have been an abuse of his discretion for him not to have imposed the sanctions.

All this trouble was the doctor's and his counsels' own doing. It almost appears as if for some reason they did not want the case tried. If that be so, at least to that extent, they prevail as it will not be.

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

I am in full agreement with the majority opinion and write separately only because I believe the disqualification matter to be very close and perhaps deserving of more extended treatment than it is presently accorded.

There appears to have been at least overlap between Reno, O'Byrne & Kepley's (ROK's) former representation of Castillo and its present representation of the hospital. Castillo claims to have had several conversations with his ROK attorney with respect to acquiring malpractice insurance for his practice at the hospital. This, of course, is related indirectly to the subject of the present lawsuit. In *LaSalle National Bank v. County of Lake,* 703 F.2d 252 (7th Cir.1983), we prescribed the following procedure for testing for disqualification:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

703 F.2d at 255–56. I believe that Judge Baker conducted a thorough review of the disqualification matter. He requested additional briefing and then concluded, in written findings, that the current matter is unrelated to the previous representation, or that any information that might be relevant was of a very general nature—subject to discovery or ascertainable through even limited research. Order at 1–4 (Aug. 28, 1987).

Although the question is close, I do not believe Judge Baker abused his discretion in making this finding.