**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert H. BERG, President, Particle Data Inc. and Particle Data Laboratories, Ltd., Clerk of Elmhurst Friends Meeting, Defendant–Appellant.**

**Nos. 93–1756 and 93–1760.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1993.

Decided March 30, 1994.

---

Gary R. Allen, Charles E. Brookhart, Randolph L. Hutter (argued), Benjamin R. Norris, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, James B. Burns, Office of the U.S. Atty., Chicago, IL, for plaintiff-appellee.

Andrew B. Spiegel (argued), Wheaton, IL, for defendant-appellant.

Before BAUER, WOOD, Jr., and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal arises out of the appellant's failure to comply with Internal Revenue Service summonses. The Service summoned Robert H. Berg, in his capacity as an officer of three separate organizations, to appear, to testify, and to produce records related to the tax liability of the organizations. Berg failed to appear. Many months later, upon motion by the Service, the district court entered an order enforcing the Service's summonses. Berg again failed to comply. He instead filed a motion asking the court to modify its enforcement order. The court denied that motion. Ultimately the court held Berg in civil contempt. Only then did he finally comply with the summonses. Additionally both Berg and the Service filed cross motions for Rule 11 sanctions; the court denied both motions. Berg appeals the finding of contempt, the denial of his motion to modify the enforcement order, and the denial of his motion for Rule 11 sanctions.

## I.

Robert Berg was the President of Particle Data, Inc. (PDI) and Particle Data Laboratories, Ltd. (PDL), as well as the Clerk of the

Elmhurst Friends Meeting, a Quaker organization that held meetings in Berg's home. The Internal Revenue Service ("the Service") sought various records of these organizations in connection with an investigation into their tax liabilities for certain years. More than three years elapsed between the time the Service originally sent summonses to Berg and the time that the court held him in contempt, whereupon Berg ultimately complied. An understanding of the precise chronology of the events is necessary for a complete discussion of the relevant issues raised.

On November 14, 1989, the Service issued summonses [1] to Berg as President of PDI and PDL, directing him to appear on December 13, 1989, give testimony, and produce records relevant to the Service's investigation into the tax liabilities for the two organizations for the years 1984–1988. On January, 17, 1991 the Service issued another summons to Berg, this time in his capacity as the Clerk of the Elmhurst Friends Meeting, asking for similar records relevant to the tax liability of that organization for the years 1987–1989. Berg failed to comply with any of these summonses. Then on February 14, 1992, the Service issued summonses again for the same purposes mentioned above. In these summonses, Berg was directed to appear on February 26 and 28, 1992. Again he failed to comply.

On behalf of the Service, the United States ("the government") filed a petition in the district court on April 13, 1992, asking the court to enforce the summonses. The court ordered Berg to show cause explaining why the summonses should not be enforced and set a hearing date of August 28, 1992. Berg requested and received an extension of time to show cause until September 18, 1992. Berg failed to respond by that date. Consequently the court granted the government's petition. On October 22, the court entered an order enforcing the summonses. The court ordered Berg to appear on November 16, 1992, to give testimony, and to produce the records and documents demanded by the summonses for examination and copying "with such examination and copying to continue from day-to-day until complete."

Although Berg appeared on November 16, 1992, he failed to produce the requested documents and records. Instead he produced summary financial statements and unsigned copies of tax returns relating to PDI and PDL. He produced no original documents to support the information in those financial statements or returns. In addition he produced no financial documents concerning the Elmhurst Friends Meeting. Following this, the government sent a letter to Berg stating that he had not complied with the summons and that if he did not comply on December 7, 1992, the government would seek to have him found in contempt. Berg appeared at the Service's office on December 7 and had the summoned documents in the trunk of his car. He failed, however, to produce them to the Service. Instead he demanded that they be photocopied immediately; only under that condition would he allow access to the records. The Service refused and the meeting ended. Following that meeting Berg mailed to the Service copies of bank statements including copies of the front sides of various checks relating to financial activity of the Elmhurst Friends Meeting.

In January of 1993 Berg filed a motion to modify the enforcement order. He noted that the Service had failed for six years to return documents that it had summoned in another investigation concerning PDI and PDL. This, Berg argued, evidenced an abuse of the summons authority. The government responded by filing a motion asking the court to: 1) find Berg in contempt; 2) impose a fine of $500 per day until Berg complied; and 3) impose sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). The court held a hearing on the first two issues. Upon recommendation by counsel, Berg failed to attend the hearing. The court denied Berg's motion to modify the enforcement order. On the issue of contempt, the government contended that Berg had plainly failed to abide by the court's order. Berg's counsel admitted that Berg had the documents prepared and that they had been in the trunk of his car since at least the December 7, 1992 meeting, but that Berg would only release them on his own condi-

1. The summonses in this case were issued pursu- ant to 26 U.S.C. sec. 7602.

tions. The court found that Berg had failed to comply with the order and found him in contempt. It fined Berg $500 per day until compliance. Finally, the court deferred ruling on the motion for Rule 11 sanctions. Following this hearing, Berg produced all of the documents regarding PDI and PDL. He waited six days, however, before producing the remaining materials related to the Elmhurst Friends Meeting. The court therefore fined him $3,000 (six days at $500 per day).

In response to the government's motion for Rule 11 sanctions Berg filed a cross-motion for Rule 11 sanctions against the government. The court denied both motions. Berg now appeals the denial of his motion to modify the enforcement order, the finding of contempt, and the denial of his motion for Rule 11 sanctions.

## II.

### A.

Motion to Modify the Enforcement Order

■ The Internal Revenue Service has the authority to issue summonses for the purpose of gathering information relevant to an investigation into the tax liability of any entity. 26 U.S.C. § 7602. If the person who receives such a summons fails to comply with it, the Service may seek judicial enforcement. 26 U.S.C. § 7604. The United States District Courts have the jurisdiction and authority to issue orders compelling compliance with a summons from the Service. 26 U.S.C. § 7402(b) and § 7604(a). To obtain enforcement, however, the Service must demonstrate that: 1) it is conducting the current investigation for a legitimate purpose; 2) the information it seeks "may be relevant to that purpose"; 3) it does not already possess the information; and 4) it has followed the administrative steps that the Internal Revenue Code requires. *United States v. Powell*, 379

U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964).

After Berg had failed to comply with the Service's summonses in this case, the government petitioned the district court to enforce the summonses. The court ordered Berg to show cause why it should not enforce the summonses and allowed him four months to make such a showing. Berg requested and received an additional month to respond. Nevertheless, despite the additional time allowed, Berg failed to respond to the court's order. After reviewing the government's affidavits, the court found that: 1) the government sought the information for legitimate purposes;[2] 2) the information may have been relevant to those purposes; 3) the information was not already in the government's possession; and 4) the government had followed proper administrative steps. The court thus entered an order enforcing the summonses and compelling Berg to appear, testify and, produce the relevant materials to satisfy the summonses. Berg never appealed this order.

■ Three months later, Berg filed a motion to modify the enforcement order. In that motion he claimed that the Service was acting in bad faith because it had not yet returned documents that it summoned in a prior investigation. The Service had also been investigating PDI and PDL for the years 1979–1984. In the course of that investigation Berg produced, and the Service obtained, seven boxes of records (relevant to the investigation of the tax years 1980–1982).[3] At the time of Berg's motion to modify, the Service still had not returned those records.[4] Berg argues that this delay, in a separate investigation, reflects an absence of any good faith purpose for instituting the current investigation. The district court denied Berg's motion. We review that denial for abuse of discretion.

---

**2.** The court listed as the legitimate purposes the following: 1) "the church tax examination of Elmhurst Friends Meeting for the years 1987–1989 and its liability, if any, for unrelated business income tax; and 2) "the correct federal income tax liabilities of [PDI and PDL] for the years 1984–1988."

**3.** Berg also produced seven other boxes of documents that the Service never inspected.

**4.** The record contains no indication that Berg sought the return of those records in any manner whatsoever before the Service instituted the second investigation.

▇▇ A district court should not enforce a summons if the Service "is acting in bad faith or attempting to abuse the court's process. 'Such an abuse would take place if the summons had been issued for an improper purpose such as to harass the taxpayer, ... or for any purpose reflecting on the good faith of the **particular** investigation.'" *United States v. Michaud,* 907 F.2d 750, 751 (7th Cir.1990) (quoting *Powell,* 379 U.S. at 58, 85 S.Ct. at 255) (emphasis added). In the current case, the government sought records for an investigation of PDI and PDL for the years 1984–1988. Counsel for Berg admitted at the hearing on the motion to modify that the records the Service had failed to return "have to do with the investigation of Mr. Berg's tax liability for 1980, 1981, and 1982." He therefore admitted that those records related to a separate investigation. Berg presents no articulable reasons to connect the two investigations to one another except to say that they both pertain to the same entities. He makes the untenable argument that because the Service delayed the return of the previous records, and took no action in that separate investigation, it must lack any good faith purpose for issuing the summonses pertaining to the current investigation. Such a conclusion simply does not follow as a matter of law or logic.[5] We conclude that any delay in returning the previous records, or any abandonment of the previous investigation, does not demonstrate an absence of a good faith purpose for instituting the "particular investigation" in this case, for which the Service had already satisfied its prima facie burden of showing that a legitimate purpose existed. Therefore, the court did not abuse its discretion by denying Berg's motion to modify the enforcement order.[6]

---

5. Berg's argument essentially says the following: Any time the Service discontinues an investigation or fails to take action concerning the tax liability of an entity for certain tax years, it may never again investigate the tax liability of that entity even if that investigation pertains to subsequent years. We decline to endorse this result.

6. Berg correctly notes that the Service cannot use its summons authority if its only purpose is to gather evidence for a criminal investigation, (i.e. if it has " 'no civil purpose whatsoever' and [it] 'has abandoned any institutional pursuit of civil tax determination.' "). *Michaud,* 907 F.2d

## B.

### Contempt Proceedings

After Berg had failed for several months to obey the court's order to comply with the summonses, the government petitioned the court to find Berg in contempt. The district court held a hearing on the issue of contempt on January 22, 1992. Berg failed to attend that hearing. At the hearing, his attorney stated that the documents were prepared and stowed in the trunk of Berg's car, where they had been for over a month. At the conclusion of the hearing the court found that Berg had failed to comply with the order enforcing the summons and adjudged him to be in contempt. Furthermore, the court fined him $500 per day until compliance. Berg now appeals the finding of contempt and the imposition of the fine. He argues: 1) the court failed to follow statutorily prescribed contempt procedures; 2) he was denied due process; and 3) the government did not meet its burden of proof at the contempt hearing.

### 1. Statutory Contempt Procedures

His first argument is that the court failed to follow the mandated procedure for contempt hearings set forth in 26 U.S.C. sec. 7604(b). That section states that when any person fails to obey an Internal Revenue Service summons, the government "**may** apply to the judge of the district court ... for an attachment against him as for a contempt." (emphasis added). The statute then details the proper procedures to follow, including: arresting the person; bringing him before the court; then, and not until then, holding a hearing. Berg contends that be-

---

at 754 (quoting *United States v. Kis,* 658 F.2d 526, 541–42 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982)). He then argues that because the service took no action in the previous investigation it must have abandoned any purpose for that investigation. He offers no explanation why a failure to take action in a prior investigation necessarily must reflect an abandonment of any pursuit of a civil tax determination in the current investigation. As we mentioned in the text of this opinion, such a conclusion simply does not follow and we must reject Berg's argument.

cause the court did not follow these procedures in his case, the contempt order must be invalid.

This argument suffers from one fatal flaw. The government did not seek a finding of contempt pursuant to the above discretionary statute; rather, it asked the court to enter an order finding Berg in contempt pursuant to the court's general powers to issue "orders or processes . . . necessary or appropriate to the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Therefore section 7602(b) did not apply to this case and Berg's arguments concerning it are meritless.

### 2. Due Process

Next Berg argues that, statutory issues notwithstanding, the court denied him due process of law because: 1) he received no notice of the contempt proceedings and no opportunity to be heard; 2) the original order enforcing the summons was unclear and not sufficiently specific; and 3) the fine imposed was excessive and improper.

### a. Notice and opportunity to be heard.

■ Before finding a party in contempt, the district court must allow that party an "opportunity to contest the issue." *Ferrell v. Pierce,* 785 F.2d 1372, 1383 (7th Cir.1986). Berg's claim that he was denied notice and an opportunity to be heard, however, is perplexing in light of the record. The government served a copy of its motion for an order finding Berg in contempt upon Berg in advance of the hearing date and Berg's counsel admitted that Berg was aware of the hearing. Therefore he had necessarily received notice. Although Berg was aware that the court was considering finding him in contempt for failure to comply with a court order, upon his counsel's recommendation he failed to attend the hearing and present his position or contest the issues. Berg's attorney, who did attend the hearing, was permitted to argue at length on Berg's behalf. The district court in this case did nothing to deprive Berg of an opportunity to be heard. Rather, Berg

merely failed to avail himself of the opportunity the court had provided. We hold that this failure on Berg's part does not amount to a violation of due process.

■ Additionally Berg claims that he was entitled to an evidentiary hearing concerning the contempt issue. As we have previously held, "[a] federal civil contempt proceeding is a civil proceeding governed by the rules of civil procedure. . . . Those rules entitle a party to an evidentiary hearing only if there are genuine issues of material fact." *In re Grand Jury Proceedings Empanelled May 1988,* 894 F.2d 881, 882–83 (7th Cir.1989) (citations omitted).[7] Berg has failed to identify any questions of material fact relevant to the contempt proceedings and as such has no right to an evidentiary hearing.

### b. Clarity of the original order.

■ Holding a party in contempt is only appropriate if the court can "point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party violated." *Ferrell,* 785 F.2d at 1378 (quoting *H.K. Porter Co. v. National Friction Prods.,* 568 F.2d 24, 27 (7th Cir. 1977)). The court's orders of October 22, 1992 instructed Berg to

appear at 9:00 am, on November 16, 1992, at the offices of the Internal Revenue Service [specific address provided], then and there to be sworn, to give testimony, and to produce the books, records, papers, and other data as demanded by the summonses served upon him for examination and copying by photographic or other mechanical means of reproduction, with such examination and copying to continue from day to day until completed.

The summonses referenced in those orders, one pertaining to PDI and PDL and one pertaining to the Elmhurst Friends Meeting, each provided even more detailed descriptions and lists of the documents Berg was to produce. Berg now claims that the summonses and the orders were vague and he could not be expected to comply with them.

---

7. In addition, in a civil contempt proceeding the district court normally will "proceed in a more summary fashion than it would on an ordinary

complaint." *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 459 (1993) (citations omitted).

Most of Berg's objections are frivolous. He contends that the orders did not specify by what date the Service had to complete its review of the documents, what would happen to the Service if it failed to cooperate with Berg, or what would happen to Berg if he failed to comply. None of those factors even remotely affects the clarity of the order's mandate that Berg was to appear and produce documents.

Furthermore, we will not entertain an argument concerning the clarity of the orders as they pertain to PDI and PDL because Berg had in fact assembled those documents but simply refused to turn them over to the Service. The fact that he actually compiled the required materials renders moot any argument that an ambiguity in the order prevented him from complying.

Regarding the Elmhurst Friends Meeting, the summons required Berg to produce, among other things, all canceled checks. Berg instead produced copies of only the front sides of canceled checks. Six days after the court entered its contempt order, Berg finally produced the checks themselves. Because of the six day delay, the court fined him $3,000 ($500 per day). He now claims that the contempt order was improper because he could not have known that he was required to provide the "original" canceled checks. The summons, referred to in the order, specifically required Berg to produce all canceled checks so the Service could copy them. A copy of only one side of a canceled check is not, under any definition or interpretation, the same as a canceled check itself. No reasonable person could think that producing a copy of one portion of a document could satisfy his duty to produce that document. We reject Berg's argument that the orders were unclear.

### c. Imposition of fines.

The court issued its contempt order on Friday, January 22, 1993. It ordered that fines would be imposed at a rate of $500 per day beginning at 12:00 am on Saturday, January 23. Although Berg complied with regard to the PDI and PDL summons on January 22, he did not comply fully with the Elmhurst Friends Meeting summons until January 28, 1993, six days after fines began accruing. Berg now argues that it was an abuse of the court's discretion to impose fines for non-compliance for Saturday and Sunday, days on which the Service's offices were closed and he could not have complied had he attempted.

A court may impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." *Connolly v. J.T. Ventures,* 851 F.2d 930, 932 (7th Cir.1988) (citing *United States v. United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947)). Furthermore the district court has broad discretion in imposing those sanctions. *Id.* at 933. In this case, imposing a fine for the weekend days was not an abuse of that discretion. First the fines served a permissible purpose of coercing Berg to comply with the court order as soon as possible. The fines for the weekend days merely produced added incentives to cease the three-year delay in complying with the summonses and produce the documents before the weekend began. In fact Berg did comply with respect to PDI and PDL prior to the close of business on Friday January 22. Finally, there was no indication that Berg made any attempt to comply over the weekend but was prohibited because the offices were closed. As the record discloses, Berg did not comply until the following Thursday; therefore, he suffered no prejudice as a result of the weekend fines. For these reasons the imposition of fines for the entire six day period was a proper exercise of the court's discretion.

### 3. Burden of Proof

Finally, Berg argues that the government did not meet its burden of proof with regard to the finding of contempt. Before a court can enter a finding of contempt for failure to follow a court order, the complaining party must prove, by clear and convincing evidence, that the person has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Stotler & Co. v. Able,* 870 F.2d 1158 (7th Cir.1989) (quoting *American Fletcher Mortgage Co. v. Bass,* 688 F.2d 513, 517 (7th

Cir.1982)). Once a court makes a determination that the evidence is clear and convincing, and that civil contempt is appropriate, we will not upset that finding absent an abuse of discretion or clear error. *Ferrell*, 785 F.2d at 1378.

The district court held a lengthy hearing on this issue before making its ruling. The government presented declarations of Revenue Agents indicating that Berg had not provided the requested materials and detailing Berg's recalcitrant attitude and refusal to deal with the Service except on his own conditions. Furthermore Berg's counsel stated at the hearing that Berg admitted he had the materials assembled and ready to deliver to the Service, and that they had been ready since at least the meeting on December 7, 1992. That meeting was the second one after the court issued its order to comply on October 22, 1992. Although Berg had the documents prepared, he refused to produce them unless the Service would copy them immediately and return them. This condition that he sought to impose was nowhere found in the order. Rather, the order explicitly stated that the Service was allowed to copy them "from day to day until completed."

Based on this evidence and testimony, which the district court had before it, we conclude that the court was well within its discretion in finding, by clear and convincing evidence, that Berg had failed to comply with the October 22, 1992 order. Therefore, we affirm the finding of contempt.

### C.

### Motions for Rule 11 Sanctions

After Berg filed his motion to modify the enforcement order, the government filed a motion for Rule 11 sanctions against Berg and his attorney based on Berg's failure to obey the court's order and other dilatory conduct. Berg not only objected to the government's motion but also filed a cross-motion for Rule 11 sanctions against the government. The basis for Berg's cross-motion was that the government, in its own motion for sanctions, failed to identify a pleading, motion, or other paper that was signed in violation of Rule 11. Berg argued that one can only make a motion for Rule 11 sanctions against a party if that person has signed a pleading, motion, or other paper in violation of the Rule. Therefore, Berg argued, the government's motion for sanctions had no legal basis and was itself signed in violation of Rule 11. Ultimately the court denied both motions. Berg appeals the denial of his cross-motion. We must review that denial under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990).

After Berg filed his cross-motion, the government filed a brief in support of its motion. In this brief, the government more than adequately identified motions and other papers that Berg signed and argued that he filed them in violation of Rule 11. The district court acted well within its discretion by considering the motion and the brief together and concluding that the government's motion, as read in conjunction with the supporting brief, was filed within the parameters of Rule 11.

The court issued its ruling before Berg had filed his final reply. Berg argues that the court thus abused its discretion by ruling prematurely. We disagree. The briefs that the court had before it at the time of its ruling contained ample presentation and discussion of the relevant issues and arguments, such that the court could, within its discretion, make a sound and reasoned decision.[8]

### III.

Berg's actions in this case amounted to inexcusable recalcitrance and blatant contempt of court. For over three years the Service attempted to review Berg's records

---

**8.** Moreover, we have examined the reply that Berg ultimately submitted and have determined that it is of no consequence. Most of his arguments amount to nothing more than a repetition of the general arguments in his original motion.

Given our holding that the court did not abuse its discretion by reading the government's motion in conjunction with its brief, the remainder of the arguments in Berg's reply are irrelevant.

and for over three years Berg frustrated those attempts by failing to appear at scheduled meetings and ignoring the mandates of a federal district court. Berg's motion to modify the enforcement order was meritless and the court properly rejected it. Berg's arguments regarding the finding of contempt were equally unavailing. He knowingly failed to attend a court hearing on the issue of contempt yet came before this court arguing that the district court had deprived him of an opportunity to be heard—such an argument borders on being frivolous. The $3,000 fine for his contempt was not only appropriate but generous in light of three years of evading the Service's legitimate requests. Finally the court properly rejected Berg's frivolous motion for sanctions against the government. The decisions of the district court are

AFFIRMED.