Jane DOE and Mary Roe,
Plaintiffs–Appellees,

v.

MAYWOOD HOUSING AUTHORITY and
Ricardo Marshall, Defendants.

Appeal of Robert L. SCOTT.

No. 95–1288.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1995.

Decided Dec. 7, 1995.

Sheldon T. Zenner, Nicole N. Auerbach (argued), Maureen D. Pearson, Katten, Muchin & Zavis, Chicago, IL, Helen Cropper, Amy F. Peterson, Cook County Legal Assistance Foundation, Oak Park, IL, for Jane Doe, Mary Roe.

Stanley L. Hill, Andre M. Grant, Hill & Associates, Chicago, IL, for Maywood Housing Authority.

Judith A. Scully, Chicago, IL, for Ricardo Marshall.

Robert L. Scott, Chicago, IL, pro se.

Before POSNER, Chief Judge, and CUDAHY and MANION, Circuit Judges.

MANION, Circuit Judge.

Attorney Robert L. Scott appeals two orders from the district court, one which found him in criminal contempt for violating a protective order requiring that he and his clients not use real names to identify the plaintiffs in this case, and the second which sanctioned him under Fed.R.Civ.P. 11 for filing a frivolous counterclaim. Because the district court's orders were well-founded and Scott was granted all necessary procedural protections, we affirm.

## I. Background

In May 1993 plaintiffs Jane Doe and Mary Roe filed a complaint against defendants Maywood Housing Authority ("Maywood") and Ricardo Marshall alleging violations of the federal Fair Housing Act, 42 U.S.C. § 3601 et seq. (Title VIII), and of their constitutional rights, for which they sought redress under 42 U.S.C. § 1983. The plaintiffs charged that Marshall, an official with Maywood, attempted to receive sexual favors in exchange for advantages in housing opportunities. The plaintiffs also alleged that Maywood knew of Marshall's history of sexual harassment but allowed him to continue to work there. Attorney Robert L. Scott ("Scott"), the actual appellant in this case, represented Maywood and Marshall until March 29, 1994, when he withdrew as counsel. The underlying case is still pending in the district court.[1]

Because of the sensitive subject matter of the plaintiffs' suit, on June 30, 1993, the district court granted the motion of Doe and

---

1. Because the contempt and sanctions orders are final with respect to all parties, and Scott filed a timely notice of appeal, this court properly has jurisdiction pursuant to 28 U.S.C. § 1291. See, e.g., Securities Exch. Comm. v. Simpson, 885 F.2d 390, 395 n. 7 (7th Cir.1989) (because district court order imposed criminal contempt sanctions, order is an appealable final decision).

Roe to proceed using pseudonyms. On August 31, 1993, the district court entered a protective order which prevented Maywood and Marshall from using Doe's and Roe's real names during this litigation. But on November 16, 1993, on behalf of Maywood and Marshall, Scott filed an answer and counterclaim (a document erroneously entitled "Complaint") in which Scott used plaintiffs' pseudonyms in the caption, but repeatedly referred to the plaintiffs by their true names in the body of the document. The counterclaim sought damages from Doe and Roe for filing their complaint, and sounded in the nature of a malicious prosecution cause of action.

The district court sealed the answer and counterclaim because it disclosed the identities of Doe and Roe in violation of the protective order. Doe and Roe moved to dismiss the counterclaim and filed a motion for an order to show cause why Scott should not be held in contempt of court for revealing their identities. In his response to the motion for an order to show cause, Scott again referred to the plaintiffs by their true names.

On September 21, 1994, the district court, in a well-reasoned memorandum opinion and order, considered the parameters of its protective order and whether Scott's actions violated that order. When it found they had, it considered whether these violations could constitute civil or criminal contempt and whether Scott was entitled to a jury trial. The district court concluded that Scott's violations of the protective order could constitute criminal contempt, although they were not a candidate for summary adjudication under Fed.R.Crim.P. 42(a), and that a jury trial was not necessary because the sanctions the court was considering did not exceed six months' imprisonment or a $10,000 fine. Accordingly, the district court ordered Scott to show cause why he should not be held in criminal contempt for revealing the identities

of Doe and Roe in violation of the protective order. The district court also dismissed the counterclaim with prejudice, notifying Scott that it considered the filing and signing of the counterclaim a violation of Fed.R.Civ.P. 11. The court set a hearing date for the contempt citation and a briefing schedule on the Rule 11 violation.[2]

On October 21, 1994, the district court granted Scott an extension of time to file a memorandum on the Rule 11 violation. At a status hearing on October 27, 1994, the district court scheduled a hearing on its order to show cause. On November 15, 1994, the district court granted Scott leave to file a substitute memorandum in place of an earlier-filed brief. On December 5, 1994, the evidentiary hearing was rescheduled at Scott's request so that he could retain an attorney, which he never did. That evidentiary hearing took place on December 20, 1994. Scott represented himself, testified, offered arguments and exhibits, and presented the testimony of a Maywood board member.

On December 30, 1994, the district court entered the two orders that are the subject of this appeal. The district court found Scott to be in criminal contempt for violation of the August 30, 1993 protective order and assessed a fine of $2,000. In a separate order it found Scott had violated Rule 11 by filing the counterclaim, and ordered him to pay the attorneys' fees for Doe and Roe in connection with their motion to dismiss the counterclaim. Those fees totaled $2,565.00. Although Scott appeals the contempt and Rule 11 orders, Maywood and Marshall do not appeal the order dismissing the counterclaim.

## II. Discussion

### A. Criminal Contempt

 The fundamental distinction between criminal and civil contempts is the

---

**2.** Circuit Rule 30(b)(1) requires an appellant to include in an appendix "[c]opies of any other opinions or orders in the case that address the issues sought to be raised." The district court's September 21, 1994 memorandum opinion and order falls within this category, but Scott failed to include it in the appendix to his brief. Although we will not sanction Scott because Doe and Roe have included the opinion in their sup-

plemental appendix, we look with disfavor upon the omission. *See, e.g., GCIU Employer Retirement Fund v. Chicago Tribune Co.,* 66 F.3d 862, 864 (7th Cir.1995) (summary affirmance an option for violation of Circuit Rule 30); *United States v. Smith,* 953 F.2d 1060, 1067–68 (7th Cir.1992) (lawyer sanctioned for certifying that appendix contained all required material when it did not).

type of process due for their imposition. *International Union, UMWA v. Bagwell,* — U.S. —, — — —, 114 S.Ct. 2552, 2561–63, 129 L.Ed.2d 642 (1994). A contempt sanction is considered civil "if it is remedial and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Id.* at —, 114 S.Ct. at 2557. Here Scott appeared to ignore the authority of the district court and his sanction is for criminal contempt.

■ Federal Rule of Criminal Procedure 42(b) governs the procedures to be used in imposing the criminal contempt sanctions authorized by 18 U.S.C. § 401(3) and issued by the district court in this case. "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Hicks v. Feiock,* 485 U.S. 624, 632, 108 S.Ct. 1423, 1429–30, 99 L.Ed.2d 721 (1988). Therefore, we must ensure that Scott received the necessary protections mandated by Rule 42(b), which include reasonable notice of the charge and an opportunity to be heard in defense before punishment is imposed. *Groppi v. Leslie,* 404 U.S. 496, 502, 92 S.Ct. 582, 586, 30 L.Ed.2d 632 (1972). Further, Scott is entitled to have the contempt proved beyond a reasonable doubt. *Bagwell,* — U.S. at —, 114 S.Ct. at 2557 (citing *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911)). In our review of the sufficiency of the evidence in support of a finding of criminal contempt, we must determine whether any reasonable trier of fact could have been convinced of guilt beyond a reasonable doubt. *United States v. Maynard,* 933 F.2d 918, 920 (11th Cir.1991) (citations omitted). The conviction will be sustained if there is substantial evidence to support it. *Id.* Further, in evaluating the district court's reasoning, we defer to its determination of the witness' credibility at the evidentiary hearing. *See, e.g., United States v. Messino,* 55 F.3d 1241, 1252 (7th Cir.1995) (district judge in best position to assess credibility of defendant because judge is intimately familiar with record and has opportunity to observe defendant's demeanor at hearing).

■ The essential elements of a finding of criminal contempt under 18 U.S.C. § 401(3) are a lawful and reasonably specific order of the court and a willful violation of that order. *United States v. KS & W Offshore Eng'r, Inc.,* 932 F.2d 906, 909 (11th Cir.1991) (citing *United States v. Turner,* 812 F.2d 1552, 1563 (11th Cir.1987)). Although § 401(3) does not expressly contain an intent requirement, this court has held that willfulness is an element of criminal contempt and must be proved beyond a reasonable doubt. *United States v. Greyhound Corp.,* 508 F.2d 529, 531–32 (7th Cir.1974). "Willfulness" is defined as a "volitional act done by one who knows or should reasonably be aware that his conduct is wrongful," and it may be inferred from "the facts and circumstances in proof." *Id.*

■ We conclude, first, that the protective order the district judge issued was a lawful and reasonably specific (as well as not uncommon) mechanism to protect Doe and Roe from humiliation and embarrassment. In the underlying suit Doe and Roe charged that Marshall attempted to coerce sexual favors for improvements in their housing conditions, and that Maywood was negligent in its supervision of Marshall's conduct. Considering the nature of these allegations, the district court properly ordered the use of pseudonyms by Doe and Roe. Our review of the relevant part of the protective order indicates that it was properly tailored and not unduly broad or burdensome.

We next consider Scott's violation of the protective order. Scott admitted he violated the order, but said he did not do so "willfully." The district court held an evidentiary hearing, heard testimony from Scott and a Maywood board member, and reviewed written submissions by the parties. The district court found untenable Scott's explanation that he included the true names of Doe and Roe in the pleadings to assist Maywood's employees in investigating the matters alleged in the complaint. The court concluded that Scott willfully violated the protective

order because: (1) the answer and counterclaim did not have the earmarks of a document prepared to assist a client, but rather indicated that the drafter's "mind was made up," and (2) there were no indicia that the disclosure was inadvertent.[3]

The record is replete with substantiation for the district court's conclusion of criminal contempt in general, and for Scott's volition to violate the order in particular. As the district court correctly noted, the answer and counterclaim Scott filed would have had no use for the purpose Scott asserts. Rather than a document prepared to assist his client in investigating the truth of the matters alleged in the complaint, Scott's answer consists (as is typical of an answer) of a series of unequivocal denials of the allegations of Doe and Roe. Consequently, circulation of the document among Maywood's employees would not have advanced an investigation by his client. Moreover, there would be no reason to use the answer and counterclaim to investigate plaintiffs' claims if the document itself said that no further investigation was necessary. Further, the counterclaim, which is part of the same pleading, alleges that Doe and Roe knew that their charges were baseless, but nonetheless filed this suit without a sufficient legal or factual basis for their claims. This could have reasonably led the district court to conclude that Scott knew that use of the true names of Doe and Roe was directly contrary to the court's order, but that Scott intended to do so only to retaliate against Doe and Roe for having filed suit.

■ The district court complied with all strictures of Fed.R.Crim.P. 42(b) before it found criminal contempt. In its September 21, 1994 memorandum opinion and order the district court weighed its various options with respect to a contempt finding, surveyed the proper law, and issued an order to show cause which afforded Scott the proper notice of the charges against him and a reasonable amount of time for him to prepare a defense. The court held an evidentiary hearing at which Scott testified, offered arguments and exhibits, and presented the testimony of another witness. Moreover, upon Scott's request, the district court granted him the courtesies of leave to file a substitute brief and a continuance of the hearing on the order to show cause.

Given the reasons offered by the district court for its conclusion, and considering our deference to that court's credibility determinations, we conclude that criminal contempt was among the options from which we would have expected the district court to choose in its discretion in these circumstances. Scott's assertions that the contempt order chills the attorney-client relationship, contradicts the Model Rules of Professional Conduct, or infringes upon Maywood's right to counsel border on the frivolous. The district court did not abuse its discretion in concluding that Scott had acted with criminal contempt by using the plaintiffs' real names. The court complied with all procedural strictures in its finding of criminal contempt. We uphold that finding and the $2,000 fine levied against Scott.

### B. Rule 11 Sanctions

■ The district court also sanctioned Scott under Fed.R.Civ.P. 11 for filing a frivolous counterclaim. This counterclaim sounded in malicious prosecution, although the court had entered no judgment in the case on which Scott based his counterclaim. Scott's actions are evaluated under the stricter standards of Rule 11 as they existed before the December 1993 amendments, as the "old" Rule 11 was in effect when Scott's counterclaim was filed and when the district court gave Scott notice. *Land v. Chicago Truck Drivers Union,* 25 F.3d 509, 516 (7th Cir. 1994) (preamendment version of Rule 11 applies to case pending on effective date of amended rule). On appeal, Rule 11 sanctions are reviewed for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *Mars Steel Corp. v. Continental*

---

**3.** The district court did not find Scott in contempt for revealing the true names of Doe and Roe in his response to the motion for an order to show cause because it found Scott's explanation reasonable that the court file had been sealed by the time he filed his response and that Scott had delivered his response directly to chambers.

*Bank, N.A.,* 880 F.2d 928, 936 (7th Cir.1989) *(en banc).*

 A district court abuses its discretion in issuing Rule 11 sanctions when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or when the court fails to give an explanation for its ruling or fails to properly notify the offender. *Mars Steel,* 880 F.2d at 936. The district court concluded correctly that Scott failed to make a reasonable prefiling inquiry into the requirements of a malicious prosecution claim. Even minimal inquiry into the law of malicious prosecution would have demonstrated to Scott that such a claim requires termination in favor of the complainant. *Joiner v. Benton Community Bank,* 82 Ill.2d 40, 44 Ill.Dec. 260, 263, 411 N.E.2d 229, 232 (1980). But the counterclaim Scott signed included no such allegation, and indeed it could not: no judicial proceeding in which the parties were involved had terminated in favor of Maywood and Marshall. Moreover, the counterclaim refers to the underlying suit itself. Illinois law is clear that mere initiation of a lawsuit cannot be the basis for a malicious prosecution. *Evans v. West,* 935 F.2d 922, 923 (7th Cir.1991); *Withall v. Capitol Fed. Sav. of Am.,* 155 Ill.App.3d 537, 108 Ill.Dec. 202, 207, 508 N.E.2d 363, 368 (1987). The district court considered these matters and provided ample explanation for imposition of sanctions.

 The district court also complied with the notification requirements of Rule 11. It notified Scott *sua sponte* that it intended to impose these sanctions, permitted Scott an opportunity to submit and amend his memorandum supporting the counterclaim, and granted Scott a continuance in the evidentiary hearing at which he testified and called witnesses. Scott had more than a sufficient chance to defend against the district court's imposition of sanctions. Because the district court based its sanctions order on well-founded facts and law, the order will be upheld.

### III. Conclusion

The district court did not err in finding Scott guilty of criminal contempt and in awarding Rule 11 sanctions against him. Accordingly, we affirm these orders.

AFFIRMED.