In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1298

United States of America,

Plaintiff-Appellee,

v.

Milton M. Dowell,

Defendant.

Appeal Of:

Donald V. Morano.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 00-cr-30093-MJR--Michael J. Reagan, Judge.

Argued June 6, 2001--Decided July 17, 2001

Before Fairchild, Bauer, and Posner,
Circuit Judges.

Fairchild, Circuit Judge.  One week after
the district court denied attorney Donald
V. Morano's motion to withdraw from his
continuing representation of his client,
Morano did not appear in court for his
client's criminal trial. As a result of
his absence, the district court found
Morano in civil contempt and ordered him
to reimburse the court for costs incurred
from his failure to appear. Morano
appeals and we affirm.

I

BACKGROUND

On May 17, 2000, a federal grand jury
returned an indictment charging Milton M.
Dowell with two counts of being a felon
in possession of a firearm in violation
of 18 U.S.C. sec. 922(g)(1). Six days
later, William L. Gavras entered his
appearance as counsel for Dowell. On July
24, 2000, Morano entered his appearance
as co-counsel. As the case progressed,
Morano filed motions on Dowell's behalf,
participated in discovery, and attended
the pretrial conference.

On December 5, 2000, one week before trial, Morano moved to withdraw because Dowell could not afford to pay for an expert witness whom Morano deemed crucial to his defense. On December 11, 2000, the district court denied the motion. That same day, Judge Murphy pushed the trial back one week until December 19, 2000. Because the new trial date conflicted with his schedule, Judge Murphy reassigned the case to Judge Reagan. The next day, the district court issued a "Notice of Hearing" indicating the trial date and containing "NOTE: [A]ttorneys Gavras, Morano, and [Assistant United States Attorney] Daly are to appear at 8:00 AM on 12/19/00." (App. at Z-3.) On December 18, 2000, Judge Reagan conducted a telephone conference call with Gavras and Daly but not Morano. After the conference, Gavras informed Morano that the court would hold Morano in civil contempt of court should he fail to appear at trial the next morning.

On the morning of the 19th, Gavras and Daly appeared in court, but Morano did not. The district court asked Dowell whether he wished to proceed without Morano. Dowell responded that he wanted Morano to be present. The district court consequently dismissed the venire and continued the trial until January 9, 2001.

The next day the district court issued an "Order to Show Cause Why Donald V. Morano Should Not be Held in Civil Contempt of Court" and scheduled a hearing for January 3, 2001. In the order, the court noted that despite harsh weather conditions, 36 prospective jurors had appeared in court at an average cost of $69 per person, or $2,484 total. The district court compelled Morano

to show cause why he ought not be held in contempt of this Court for failure to abide by the Court's lawful writ, process, order, rule, decree, or command; and (a) fined to reimburse the United States Government for the cost of the jurors' service and mileage; (b) imprisoned and fined until he complies with the Court's lawful writ, process, order, rule, decree, or command (i.e., to appear and defend his client, Milton M. Dowell, at trial); and (c) fined to reimburse the United States Government

for the salaries, costs, and expenses of the United States Attorney's office for preparing for the cancelled trial of December 19, 2000.

(Id. at Z-7.) Pursuant to the district court's request, the U.S. Attorney's office submitted costs totaling $79.86.

At the show-cause hearing, Morano argued that the district court's Notice of Hearing was not an "order" requiring him to appear at trial. Morano further argued that he and Gavras had agreed that only Gavras would appear, and that the district court lacked authority to order his appearance because he was merely Dowell's secondary counsel. Finally, Morano contended that the district court's proposed sanction could be imposed only pursuant to the court's criminal contempt power, which would require a separate prosecution. The district court rejected these arguments and held Morano in civil contempt under 18 U.S.C. sec. 401(3). See United States ex rel. Shell Oil Co. v. Barco Corp., 430 F.2d 998, 1000 (8th Cir. 1970) (section 401 authorizes both criminal and civil contempt sanctions). On January 5, 2001, the district court ordered Morano to pay $2,563.86 to the clerk of the court within 21 days "to reimburse the United States Government" for its costs. (App. at Z-15.) This total included $2,484 for the jurors' service and mileage, $15.36 for the government's transportation, $5 for Dowell's lunch, and $59.50 for serving the show cause order. The court also ordered Morano to represent Dowell at trial and imposed a prospective, conditional fine of $5,000 for every day that he failed to appear.

Dowell's trial commenced as scheduled on January 9, 2001, with Morano in attendance as co-counsel. After a three-day trial, the jury returned a verdict of not guilty on both counts. Because Morano had carried out the court's directive by representing Dowell at trial, the court on January 11 issued an order noting that Morano had purged himself of contempt because he appeared at trial. Nevertheless, the district court iterated that the original fine still had to be paid by January 24, 2001. On January 19, Morano moved to reconsider. The district court denied the motion on January 25, but issued an order extending the time

for Morano to pay the fine until January 23, 2002. Morano filed a notice of appeal on February 5, 2001.

II

DISCUSSION

A.  Jurisdiction

Before addressing the merits of Morano's appeal, we must determine whether we may properly exercise jurisdiction over this case. The government says "no" because Morano's notice of appeal states that he is appealing the district court's January 5 contempt order, which was later modified twice by the district court. The government argues that we lack jurisdiction because the January 5 order was not final and thus not appealable under 28 U.S.C. sec. 1291. Because nonfinal decisions become appealable after a final decision in a case has been entered, Head v. Chicago Sch. Reform Bd. of Trs., 225 F.3d 794, 800 (7th Cir. 2000), what the government apparently contests is the validity of Morano's notice of appeal, which designates the January 5 contempt order rather than the revised January 25 order as the order being appealed.

The government's argument is misguided. First, the district court's January 5 contempt order was immediately appealable because nonparties to litigation such as Morano need not wait for final judgment in the underlying case before appealing a civil contempt finding. See In re Woosley, 855 F.2d 687, 688 (10th Cir. 1988); see also United States v. Accetturo, 842 F.2d 1408, 1412 (3d Cir. 1988) (holding that attorney found in civil contempt may appeal immediately); In re Fish & Neave, 519 F.2d 116 (8th Cir. 1975) (permitting counsel to appeal civil contempt finding before final judgment in underlying litigation).

Moreover, even if the January 5 order was modified before it became final and appealable, it must have been clear to everyone that it contains the findings and conclusions which Morano would challenge on appeal. He had no reason to appeal the later orders of January 11 and 25 because they were favorable to him, save the denial of his request for reconsideration. To be safe, perhaps his

notice of appeal should have referred to all three orders, but nevertheless we conclude that Morano met the requirements of Rule 3 of the Federal Rules of Appellate Procedure. "Compliance with the notice of appeal requirement of Rule 3 . . . is a prerequisite to appellate review." Remer v. Burlington Area Sch. Dist., 205 F.3d 990, 994 (7th Cir. 2000). Rule 3 requires a party to (1) specify the party taking the appeal, (2) designate the order appealed from, and (3) name the court to which the appeal is taken. Id. Rule 3's requirements are to be construed liberally. Smith v. Barry, 502 U.S. 244, 248 (1992). Mere technicalities should not stand in the way of our consideration of the merits, and we will find a notice of appeal sufficient if it is the functional equivalent of what Rule 3 requires. Ortiz v. John O. Butler Co., 94 F.3d 1121, 1125 (7th Cir. 1996) (quotations and citations omitted). Contrary to the government's argument, we have repeatedly held that an error in designating the judgment will not result in a loss of appeal if the intent to appeal from the contested judgment may be inferred from the notice and if the appellee has not been misled by the defect. Id.; Badger Pharmacal, Inc. v. Colgate-Palmolive Co., 1 F.3d 621, 625 (7th Cir. 1993); Cardoza v. Commodity Futures Trading Comm'n, 768 F.2d 1542, 1546 (7th Cir. 1985). Here, there is no ambiguity regarding the nature of Morano's appeal; he is clearly attacking the January 5 finding of civil contempt and the fine imposed. Moreover, the government does not argue that it was misled by the defect--indeed, it devotes 10 pages of its brief to defending the propriety of the sanction. We conclude that Morano has satisfied Rule 3's requirements, and we have subject matter jurisdiction over his appeal.

B.  The District Court's Civil Contempt Order

On appeal Morano challenges the civil contempt fine imposed by the district court. We will not reverse a district court's civil contempt ruling unless it is an abuse of discretion. United States v. Hoover, 175 F.3d 564, 570 (7th Cir. 1999). "A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders

and ensure judicial proceedings are conducted in an orderly manner." Jones v. Lincoln Elec. Co., 188 F.3d 709, 737 (7th Cir. 1999). For Morano to be held in civil contempt, he must have violated an order that sets forth in specific detail an unequivocal command from the court. See id. (quotations omitted).

Morano's argument that the district court's Notice of Hearing is not an order is baseless. The notice is unequivocal, stating that "[A]ttorneys Gavras, Morano, and Daly are to appear at 8:00 AM on 12/19/00." (App. at Z-3.) (emphasis added). The district court did not give Morano the option whether to appear--the notice does not state "Morano may appear," nor does it state "Gavras or Morano is to appear." Moreover, the timing and context of the notice cannot be overlooked. See In re Betts, 927 F.2d 983, 986 (7th Cir. 1991). The court had denied his motion to withdraw on the previous day and Morano acknowledges that Gavras had warned him that the district court would cite him for civil contempt if he failed to appear for trial. Consequently, Morano cannot credibly argue that the court's notice did not mandate his appearance.

Morano also contends that the fine imposed by the district court was criminal in nature and he is therefore entitled to a separate prosecution and full due process. "The fundamental distinction between criminal and civil contempts is the type of process due for their imposition." Doe v. Maywood Hous. Auth., 71 F.3d 1294, 1296-97 (7th Cir. 1995). Criminal penalties may not be imposed without affording persons the protections that the Constitution requires of criminal proceedings. Id. at 1297 (quoting Hicks v. Feiock, 485 U.S. 624, 632 (1988)). And unlike criminal contempt, in civil contempt the proof need only be clear and convincing. Stotler & Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989).

Though we are not bound by the court's designation whether a sanction is civil or criminal, see United States v. Lippitt, 180 F.3d 873, 877 n.6 (7th Cir. 1999), here the court got it right. Contempt is "criminal" if its purpose is to punish the contemnor, vindicate the court's authority, or deter future

conduct. Id. at 876. In contrast, civil contempt proceedings may be classified into two categories--coercive or remedial. Jones, 188 F.3d at 738. Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy. Id. Coercive sanctions seek to induce future behavior by attempting to coerce a recalcitrant party or witness to comply with an express court directive. Id. "Remedial sanctions, by contrast, are backward-looking and seek to compensate an aggrieved party for losses sustained as a result of the contemnor's disobedience." Id. "A monetary penalty for a wrong committed in federal court is civil in nature, if the payment is designed to compensate for harm done." In re Maurice, 73 F.3d 124, 127-28 (7th Cir. 1995).

Contrary to Morano's assertion that the sanction is punitive, the fine is remedial and therefore civil in nature: it compensates the court and the government for actual losses sustained as a result of Morano's refusal to appear at trial. Morano's recalcitrance imposed real loss; impaneling a jury costs money, and the district court tailored its sanction to compensate for these actual costs. See S. Suburban Hous. Ctr. v. Berry, 186 F.3d 851, 854 (7th Cir. 1999) (stating that when the purpose of sanctions in a civil contempt proceeding is compensatory, fine must be based on evidence of actual loss). And though Morano argues that the sanction is criminal because the court ordered payment to the clerk of the court, he overlooks the obvious--federal taxpayers foot the bill for both the prosecution and adjudication of criminal cases. Morano's disobedience cost the taxpayers money, and the district court acted well within its authority by imposing a fine that does no more than compensate the Treasury for its actual damages. See In re Jaques, 761 F.2d 302, 306 (6th Cir. 1985) (attorney who failed to appear at trial was appropriately sanctioned by civil contempt fine directing him to compensate government for venire costs); see also United States v. Mottweiler, 82 F.3d 769, 772 (7th Cir. 1996) (attorney's negligent failure to be present when the jury returned could support a civil order

requiring counsel to reimburse the judicial system for expenses); United States v. Claros, 17 F.3d 1041, 1046-47 & n.4 (7th Cir. 1994) (court may order counsel to pay jury costs as a sanction for negligent failure to appear timely at trial). Morano relies heavily on Hicks v. Feiock, 485 U.S. 624, 632 (1988), for the proposition that a contempt fine is criminal when it is to be paid to the court. But the contempt in Hicks consisted of an individual's failure to pay court-ordered child support payments, and the Court did not contemplate a situation where the court to which the fine was ordered to be paid was in effect the injured complainant.

Accordingly, the judgment of the district court is AFFIRMED.