**LOCAL 702 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Plaintiff,**

v.

**ILLINOIS CONSOLIDATED TELEPHONE COMPANY, Defendant.**

**Case No. 07–CV–0369–MJR.**

United States District Court, S.D. Illinois.

Oct. 17, 2008.

---

Marilyn S. Teitelbaum, Rochelle G. Skolnick, Schuchat, Cook & Werner, St. Louis, MO, for Plaintiff.

Henry W. Sledz, Jr., Lee Ann Rabe, Schiff, Hardin et al., Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

REAGAN, District Judge:

### I. *Factual Background and Procedural History* [1]

On May 21, 2007, Plaintiff, Local 702 International Brotherhood of Electrical Workers ("Local 702" or "the Union"), filed a three-count complaint against Defendant, Illinois Consolidated Telephone Company ("ICTC"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* and Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185. The action proceeded to judgment on the Union's amended complaint, filed July 31, 2007 (Doc. 20) and on ICTC's counterclaim, filed December 14, 2007 (Doc. 34).

In Count I of the amended complaint, the Union sought an order vacating Arbitrator Bruno Kozlowski's ("Kozlowski") award and directing ICTC to participate with the Union in requesting a new arbitrator. In the alternative, in Count II, the Union sought the enforcement of its interpretation of the award—that Kozlowski ruled in its favor on the issue of whether ICTC could transfer Illinois NOC work to the Texas NOC. As a third alternative, in Count III, the Union sought an order directing ICTC to proceed to arbitration on the Union's two-part grievance filed March 27, 2007.[2] In ICTC's counterclaim, it sought to enforce its interpretation of Kozlowski's award and to cause Local 702 to cease and desist its pursuit of a second, unilateral and duplicative arbitration.

ICTC is a wholly-owned subsidiary of Consolidated Communications Holdings, Inc. ("Consolidated"). The Union and ICTC are parties to a Collective Bargaining Agreement ("CBA" or "Agreement"). The parties' current CBA, effective November 15, 2005, through November 15, 2008, governs the terms and conditions of employment for ICTC employees, including those who work at ICTC's Network Operations Center ("NOC") in Mattoon, Illinois. Doc. 20, Exhibit 1. In April, 2004, Consolidated completed its purchase of Texas-based TXU Communications ("TXU"). TXU maintains a NOC in Lufkin, Texas. In 2006, Consolidated adopted a plan to integrate the functions of the Illinois NOC and the Texas NOC, including transfer of bargaining unit work from the Illinois NOC to the Texas NOC.

The Union filed a series of grievances protesting this transfer of bargaining unit work. The grievances were consolidated into one class action grievance which was

---

1. For purposes of clarity and completeness, the Court will reiterate, in somewhat abridged form, the background and procedural history of this action. *See* Memorandum and Order, Doc. 48.

2. In Count III of the amended complaint, the Union sought to compel a fresh round of arbitration. On March 27, 2007, the Union filed a two-part grievance (clarified on May 2, 2007), based on ICTC's continued transfer of bargaining unit work allegedly in violation of Kozlowski's award. ICTC refused to proceed to arbitration on this grievance because it allegedly believed that Kozlowski's award was in its favor.

arbitrated by Kozlowski, an impartial arbitrator chosen from a Federal Mediation and Conciliation Service panel, according to the terms of the CBA. On March 1, 2007, Kozlowski issued his Opinion and Award. Doc. 2, Plaintiff's Exhibit 1. Both parties asserted their belief that they had prevailed, and ICTC continued to transfer Illinois NOC work to the Texas NOC. The Union then filed the instant action against ICTC.

The parties filed cross-motions for summary judgment. On July 14, 2008, 2008 WL 2755448, the Court entered its Order denying ICTC's motion for summary judgment, granting the Union's motion for summary judgment and directing that judgment be entered in favor of the Union and against ICTC. The Court further ordered that Arbitrator Kozlowski's Opinion and Award be enforced under the Union's interpretation and that ICTC cease transfer of bargaining unit work in violation of the parties' CBA.

Now the Union moves the Court to order ICTC to show cause why it should not be held in criminal and/or civil contempt for failure and refusal to comply with the Court's July 14th Order.

## II. *Legal Standard*

■ "A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir.1999) **(citations omitted)**. "To hold a party or witness in civil contempt, 'the district court must be able to point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party [or witness] in contempt violated.'" *Id.* **(citing** *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986)) **(quoting** *H.K. Porter Co. v. National Friction Prods.*, 568 F.2d 24, 27 (7th Cir.1977)). In civil contempt, the proof need only be clear and convincing. *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.1989).

■ "The fundamental distinction between criminal and civil contempts is the type of process due for their imposition." *Doe v. Maywood Hous. Auth.*, 71 F.3d 1294, 1296–97 (7th Cir.1995). The Court may not impose criminal penalties without affording a party the protections required by the Constitution for criminal proceedings. *Id.* at 1297 **(quoting** *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)).

■■ "Contempt is 'criminal' if its purpose is to punish the contemnor, vindicate the court's authority, or deter future conduct." *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir.2001) **(citation omitted)**. Civil contempt proceedings fall into two categories: those designed to compel the contemnor into compliance with the Court's order and those designed to compensate the complainant for losses sustained. *Id.* **(citing** *Jones*, 188 F.3d at 738).

■ The Supreme Court has held that "[w]hile a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) **(internal quotations omitted)**. The Court, when confronted with contemptuous conduct, "should first consider the feasibility of prompting [compliance] through the imposition of civil contempt, utilizing criminal sanctions only if the civil remedy is deemed inadequate" because the "principle of restraint in contempt counsels caution" in the exercise of the court's powers. *Id.*

### III. *Analysis*

■ In the opinion of the undersigned District Judge, ICTC willfully misinterpreted, and failed and refused to comply, with its Order upholding Arbitrator Kozlowski's Award. The Court stated unequivocally that Kozlowski found that "Local 702 IBEW's *entire position* on transfer of work from Illinois NOC to Texas NOC" was substantiated. Opinion and Award, p. 6, ¶ 1 (emphasis in July 14th Order). The statement stipulated by the parties that Kozlowski was to decide was: "Did Illinois Consolidated Telephone Company violate the collective bargaining agreement and/or the past practice when they transferred the work of network surveillance, network trouble resolution, and network maintenance work from Local 702 representing network operating center technicians, also known as 'switching technicians' in Mattoon, Illinois to the Communication Works of America representing network operating center technicians and/or non-represented engineers in Lufkin, Texas." Both Kozlowski and the undersigned District Judge answered resoundingly in the affirmative that ICTC had violated the parties' CBA when it transferred the work of network surveillance, network trouble resolution, and network maintenance work from the Illinois NOC to the Texas NOC.

The Court ordered that Arbitrator Kozlowski's Opinion and Award be enforced under the Union's interpretation and that ICTC *cease transfer* of bargaining unit work in violation of the parties' CBA. As a consequence, ICTC's continuing transfer of any work of network surveillance, network trouble resolution, and network maintenance violated this Court's Order.

ICTC's suggestion that both Arbitrator Kozlowski and this Court held that transfer of the affected work was not in and of itself a violation of the parties' CBA is not merely a strained reading of the Award and Order, but a patently false reading of

both. The requirement that ICTC pay a monetary penalty for one position transferred in violation of the CBA was only one element of the Award and Order, both of which were more broad reaching than ICTC contends.

The Union asserts, "ICTC, on a daily basis is still routing this work for Illinois customer [sic] to Texas." Doc. 50, Exhibit 3. According to the affidavit of Gregory Millsap, a switchman who also serves as Chief Steward for Local 702 at ICTC, the work at issue has not been returned to the bargaining unit at the Illinois NOC and *continues to be transferred* by the Company on a daily basis to the Texas NOC." Doc. 50, Exhibit 5, Millsap Affidavit (emphasis added). According to Millsap, when Illinois technicians needing assistance with work call the Illinois NOC, "an automated telephone menu prompts the technician to select a number that sends his or her call to the Texas NOC. Each time this happens, work is transferred away from the Illinois NOC to the Texas NOC." *Id.* Millsap's affidavit explains, "In order to cease transfer of the work to the Texas NOC, the Company would need only to make a change to the automated telephone menu prompts. It would not need to install any equipment or switches as the Illinois technicians still have access to all of the equipment and switches they used to perform the work prior to its transfer to Texas." *Id.*

ICTC offers the Affidavit of Mitch Foreman, its NOC Director since 2004. Doc. 59. Foreman states that ICTC temporarily transferred some of its functions from Texas to Illinois as a result of Hurricane Ike and the related damage and power outages. According to Foreman, Illinois NOC workers had to work overtime during these periods and would not have the capacity to handle all the work handled by

the Texas group without significantly altering its operations.

What the Foreman affidavit inadvertently shows the Court is that it is not difficult for ICTC to transfer work back to the Illinois NOC when it suits ICTC's purposes. The Court is wholly without sympathy for any burdens ICTC must bear as a result of its own decisions, actions and obduracy. Those burdens can only be seen as sitting squarely at ICTC's own doorstep. The Illinois NOC was performing the necessary work before ICTC began transferring the work to Texas in 2006 in violation of the CBA. Kozlowski's Award was entered on March 1, 2007, and the undersigned District Judge's Order was entered on July 14, 2008. ICTC has continued transferring Illinois NOC work for more than 19 months since Kozlowski's Award and for three months since this Court entered its Order. ICTC appears to be attempting to run out the clock on the CBA which is effective through November 15th.

It is clear that this Court is faced with contemptuous conduct. ICTC is well aware of what it needs to do to comply with the Court's Order, and, nonetheless, it continues to transfer bargaining unit work. The Court will first seek to prompt ICTC's compliance through the imposition of civil contempt. The Court warns ICTC that failure to comply with the Court's Orders will cause the Court to deem civil contempt an inadequate remedy that may likely lead to criminal sanctions. If such contemptuous conduct occurs, the Court will promptly set a hearing to afford ICTC the protections required by the Constitution for criminal proceedings.

Accordingly, the Court **FINDS** by clear and convincing evidence that ICTC is in contempt of the Court's Order granting the Union's motion for summary judgment. "A court may impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *United States v. Berg*, 20 F.3d 304, 311 (7th Cir.1994) (**quoting** *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir.1988)) (**citing** *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). Reasonable attorney fees related to a civil contempt proceeding may also be awarded. *BPS Guard Serv., Inc. v. International Union of United Plant Guard Workers of Am. Local 228*, 45 F.3d 205, 211 (7th Cir.1995). The Union has not indicated what sanction it believes is appropriate, and the Court will await the Union's submission of a proposal as well as an itemization of fees and expenses incurred in bringing the violation to the Court's attention. The Union may file its proposal by October 27th, and ICTC may respond by November 6th.

**IT IS SO ORDERED.**