**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard J. MOTTWEILER and Catharine
D. O'Daniel, Defendants–Appellants.**

Nos. 95–3546, 95–3547.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1996.

Decided May 3, 1996.

---

Robert T. Coleman, Thomas Leggans (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Richard R. Mottweiler, Pro Se.

James J. Cutrone (argued), Chicago, IL, for Richard T. Mottweiler.

Richard R. Mottweiler, James J. Cutrone (argued), Chicago, IL, for Catherine O'Daniel.

Before CUMMINGS, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Criminal contempt of court is a dark stain on an attorney's record, even when it does not lead to imprisonment or a substantial fine. That is among the reasons why a conviction under 18 U.S.C. § 401 depends on proof of wilful misconduct. *In re Betts*, 927 F.2d 983, 986 (7th Cir.1991). The district judge held two attorneys in criminal contempt because they did not return to court promptly after the jury returned its verdict. Their absence meant that the verdict had to be sealed and the jury reassembled the next morning, disrupting the jurors' lives (the Southern District of Illinois is so large, and the distances the jurors traveled so great, that many missed a whole day's work). In addition to light fines ($250 and $100), the attorneys were ordered to pay the costs of the jury and interpreter (some $1,400) as restitution. These modest sums are considerably less than civil sanctions oft imposed under Fed.R.Civ.P. 11 and 37, or Fed.R.App.P. 38, and paid without another round of litigation. But a criminal conviction on one's record is a far greater, though nonmonetary, cost.

Richard Mottweiler and Catharine O'Daniel, the lawyers, missed the return of the verdict because Mottweiler's pager did not work. When the jury retired to deliberate, the judge told everyone to be accessible: "I do not want the attorneys or the defendant to leave the courthouse without letting [my clerk] or the court security officer know where you can be reached on short notice in case the jury comes back with a question or a verdict." Counsel promised to comply, saying in open court that they were off to a restaurant for lunch and could be paged. On the way out, Mottweiler gave his pager number to the court's minute clerk. After lunch, Mottweiler walked to a playground to shoot some hoops while O'Daniel watched; at 4:00 p.m. the duo repaired to a tavern to play pool. Restaurant, playground, and tavern all were within two blocks of the courthouse. Shortly after 5:00 the Marshal found them at the tavern; the display on Mottweiler's pager said that no calls were waiting. But something had gone wrong. The jury had returned its verdict at 2:30, and the clerk called the pager number. Four times. Mottweiler did not get the page and did not return to court until 5:15. By then the jury had been released for the day, and the judge ordered counsel to show cause why they should not be held in contempt. Mottweiler called his own pager number; nothing happened. Whether the fault was in the paging

service or in the pager has never been ascertained, but it is undisputed that calls had reached Mottweiler through the pager during the trial.

At the trial for criminal contempt, Mottweiler testified to these things, and the judge accepted his recollection as accurate. Nonetheless, the judge held, both attorneys had committed criminal contempt, because:

> You can willfully do something and not intend to do it, and people might not intend to run the red light, but they're driving their car, and they're willfully going through it.... [Y]ou did willfully absent yourself from this courthouse while a jury was out.... [Y]ou should ... have reasonably known that your conduct was wrongful in not being available to this Court for the return of the verdict. You relied upon a machine, a pager, and the pager didn't work. And you thought it worked, but it didn't. But that doesn't absolve you of your obligations and responsibilities to this Court.... And so the Court is going to [find] ... that the violation was willful in that you willfully, contrary even to what you said on the record that you were "Just going to [the restaurant]," one could reasonably assume that you were going to [the restaurant] and would return here, like most attorneys do when they go out to eat, and come back and wait for verdicts.

This explanation implies two theories. One possibility is that by leaving the restaurant for any destination other than the courthouse, the attorneys wilfully violated a judicial order. That is not tenable. The judge instructed counsel to tell the staff where they could be reached, not to be in the building. The Assistant United States Attorney also left the courthouse; the only relevant difference between prosecutor and defense counsel is that the prosecutor arrived swiftly after being called. A judge could tell counsel to return to the courtroom every so often, to avoid any communications glitches, but no such order was given in this case. The second possibility is that Mottweiler acted with the necessary mental state simply because he knew that he was out of the courthouse and relied on a fallible gadget. That approach,

too, is deficient. It implies that the prosecutor would have been in contempt of court had a construction crew cut the phone cable to his office—indeed, that both prosecutor and defense counsel would have been in criminal contempt had the court's staff written the phone numbers down incorrectly. In brief, the court applied a species of absolute liability.

■ Perhaps one could argue that criminal contempt under 18 U.S.C. § 401(3), which makes it a crime to disobey any lawful order of a federal court, should not depend on a finding of wilful wrongdoing. But the prosecutor does not make such an argument, and we have treated wilfulness as an element under § 401(3) despite the lack of any statutory reference to mental states. See, e.g., *Doe v. Maywood Housing Authority*, 71 F.3d 1294, 1297 (7th Cir.1995). "Wilful" is of course a term of many meanings. *Ratzlaf v. United States*, 510 U.S. 135, ——, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994). Our formulation in *United States v. Greyhound Corp.*, 508 F.2d 529, 531–32 (7th Cir.1974), repeated in *Doe*—"knows or reasonably should be aware that [the] conduct is wrongful"—includes the "should have known" approach usually understood to make recklessness a sufficient mental state. Yet as the Supreme Court concluded in *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), criminal recklessness is present only if the actor is conscious of a substantial risk that the prohibited events will come to pass. See also Model Penal Code § 2.02(2)(c) (1962) ("[a] person acts recklessly ... when he consciously disregards a substantial and unjustifiable risk that a material element exists or will result from his conduct"); cf. *Contract Courier Services, Inc. v. Research and Special Programs Administration*, 924 F.2d 112 (7th Cir.1991). The district judge did not find that Mottweiler knew of, and disregarded, a substantial risk that his acts would lead to absence when the jury returned—and on this record no such finding would be tenable by a preponderance of the evidence, let alone beyond a reasonable doubt.

■ Mottweiler may have been negligent. Batteries wear down, so caution might have

led an attorney to test the pager before leaving the courthouse rather than afterward, as Mottweiler did. Portable electronic devices break, so prudence might have induced an attorney to test the pager again after the playground exercise. Nonetheless, negligence does not support a criminal conviction under § 401.

██ Negligent failure to be present when the jury returns could support a civil order requiring counsel to reimburse one's adversary, and the judicial system, for the expenses to which that delict leads. See *United States v. Claros,* 17 F.3d 1041, 1046–47 & n. 4 (7th Cir.1994) (court may order counsel to pay jury costs as a sanction for negligent failure to appear on time at the start of trial). Costs should fall on those whose carelessness creates them, the better to induce people to take care. The public fisc should not be saddled with expenses that counsel could have averted by taking simple precautions. Cf. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–49, 111 S.Ct. 2123, 2132–35, 115 L.Ed.2d 27 (1991) (judicial ability to impose sanctions for misconduct in litigation does not depend on the existence of a formal rule). Still, the district judge did not find that Mottweiler acted negligently. If the court believes that such a conclusion may be warranted, it can issue an order requiring Mottweiler and O'Daniel to show cause why they should not be required to reimburse the Treasury for the outlays their late arrival occasioned. That subject is one for the district court to address, and the remarks in this opinion do not reflect any view on its proper resolution. The criminal convictions, however, are

REVERSED.