In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3730

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KARENZA S. PICKERING,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 14 CR 50056-1 — **Frederick J. Kapala**, *Judge.*

ARGUED JULY 8, 2015— DECIDED JULY 23, 2015

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* On June 17, 2014, Karenza Pickering was mailed a summons to show up for federal jury duty on July 18. A follow-up letter, intended to remind her of the summons, was mailed on July 8. When she neither responded to the summons nor appeared for duty on July 18, the district judge asked the Justice Department to institute a criminal contempt proceeding against her. The government responded by filing a motion for a rule to show cause why the

defendant should not be held in criminal contempt of court for failing to obey the summons, a procedure authorized by Fed. R. Crim. P. 42(a)(1) despite its seeming tension with the requirement that there must be proof beyond a reasonable doubt to convict a person of a crime. Cf. *Federal Trade Commission v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009). The tension can however be dissolved by noting, as the Eighth Circuit did in *In re Van Meter*, 413 F.2d 536, 538 (8th Cir. 1969), that the "order to show cause is merely a method of serving notice of the alleged violation of an order. … The alleged contemnor is at all times clothed with the presumption of innocence and the Government has the continuing burden of proving his guilt."

In response to the government's motion the district judge held a hearing to determine the defendant's guilt. An Assistant U.S. Attorney appeared at the hearing but said only that the government had "no recommendation as to an appropriate disposition" of the case. At the request of the defendant's lawyer, the judge allowed the defendant to testify to her reasons for not complying with the summons. She testified that she had received the summons but had then forgotten about it. She explained that when she received it she'd been almost five months pregnant with her first child, that it was a complicated pregnancy closely monitored by medical personnel, and that she had been placed on modified bed rest to reduce the risk of a miscarriage. And at the same time she was taking intermittent leave under the Family and Medical Leave Act from her work as a bill collector for a bank in order to care for her mother, who was undergoing a total knee replacement and also suffering from a disease called angioedema, a swelling of the skin that can cause stomach cramps and breathing difficulty. Although mother and

daughter live in Rockford, the mother was being treated for her knee problem and her angioedema at Northwestern Hospital in Chicago, and the defendant drove her to and from the hospital and sat in on all her doctors' appointments. The mother was sometimes hospitalized during this period and on those occasions the defendant would stay with her in the hospital. The defendant testified that she is not opposed to serving on a jury—she had appeared for jury duty twice in the state courts. The government's lawyer declined to cross-examine her.

At the conclusion of her testimony the judge declared her guilty of willful contempt beyond a reasonable doubt. He did not explain the basis of his conclusion beyond saying "I think that she in essence just didn't want to be bothered with this summons." He sentenced her to pay a fine of $250. That is not a heavy punishment by federal criminal justice standards, but it placed a federal criminal conviction on her record—not a good thing for a bank employee to have.

Obviously if she merely forgot the summons amidst the distractions of a complicated pregnancy and a seriously ill mother whom she was ferrying from Rockford to Chicago and back—89 miles each way—she was not guilty of *willful* disobedience of the summons. See *United States v. Mottweiler*, 82 F.3d 769, 771–72 (7th Cir. 1996). Nor did the government argue that she was lying in saying she had forgotten the summons. Indeed no *evidence* of willfulness was presented by anyone. The judge had asked the government to initiate criminal contempt proceedings and it had done so, but all it had said (in the motion for a rule to show cause that was its sole participation in the case) was that she hadn't complied with the jury summons, which of course was conceded.

Although the judge said that he had found her guilty beyond a reasonable doubt, actually he'd shifted the burden of proof to her—she had to convince *him* that she had not willfully disobeyed the summons. She was the only witness. She testified in detail and without contradiction or internal inconsistency that she had "had a lot of things that were happening all at one time"—that she "was trying to help my sick mother and out on family medical leave. I was pregnant. I experienced complications with my first child," and so she had forgotten the summons. The judge, consistent with his shifting the burden of proof to her, said (to whom? Oddly not to her): "*I'm not persuaded* by her statement that she was busy and forgot" (emphasis added). Yet obviously she *was* very busy and harassed during the critical period, and he could not lawfully place the burden of proving innocence on her in a criminal proceeding.

Had either the government's lawyer or the judge questioned the defendant, evidence of guilt might conceivably have been elicited. One can even imagine evidence presented by jury officials regarding willful disobedience of jury summons. There was nothing like that. The only reason the judge gave for finding the defendant guilty beyond a reasonable doubt was that he thought "that she in essence just didn't want to be bothered with this summons." He did say at one point that "Karenza is an intelligent person. She works at a bank. She's articulate." But he did not say that no intelligent person who works at a bank and is articulate could forget a jury summons no matter what pressures she was under—which would amount to saying that no intelligent and articulate person employed by a bank has *ever* forgotten a jury summons

The summons had stated that the recipient could ask for a "hardship excuse" from having to appear on the date specified in the summons. Since the defendant had adequate grounds to be excused, had she not forgotten the summons she would have been likely (being intelligent) to invoke the excuse rather than risk getting into trouble (she's a bank employee and therefore needs to have a clean record).

The point is not that she must have forgotten the summons—who knows? It is that proof beyond a reasonable doubt that she did not forget it is woefully lacking. The only solid evidence in the case is that she didn't appear for jury duty on July 18. That cannot be proof of *willfulness*—certainly not in the face of the uncontradicted evidence of the pressures she was under, her previous compliance with jury summonses, the availability of a hardship excuse, and the de facto refusal of the government to prosecute her. All the government did was carry out the judge's order to initiate a criminal proceeding—it made no effort to demonstrate that she was guilty of a crime.

We can imagine a parallel case in which, in the course of a criminal jury trial in which the defendant is testifying, the judge thinks he's just heard the defendant tell a lie on the stand. Despite this belief he would be mistaken to send the jury from the courtroom, find the defendant guilty of criminal contempt, and sentence him on the spot, with the sentence to be added to the sentence for the crime for which the defendant is being tried, if he's convicted, or to be served separately if he's acquitted. In both our case and the hypothetical case the judge would have only a vague impression that the defendant might be lying, rather than evidence amounting to proof beyond a reasonable doubt.

Lying on the stand (to continue with our hypothetical case) is a basis for conviction of criminal contempt only if it amounts to a more serious obstruction of justice than ordinary perjury does; if not, the proper charge is perjury and the defendant is entitled to trial by jury. *In re Michael*, 326 U.S. 224 (1945). A trial would generate evidence. The Supreme Court's refusal in the *Michael* case to allow a perjury trial to be shortcutted by a summary criminal contempt proceeding reflects a natural discomfort with resting a criminal conviction on a judge's determination of the credibility of a single witness, the defendant, with no other evidence being presented in support of or opposition to so thinly based a determination.

The government, although as we said it did not prosecute the defendant in a meaningful sense, in our court defends the conviction on the ground that the judge, since he "was able to listen to not only the defendant's words, but also to how she spoke and was able to observe her demeanor while she testified … [was] in the best position to assess her credibility." But the judge did not mention demeanor, unless his remark that the defendant is intelligent and articulate should be taken as a comment on her demeanor. Anyway, demeanor evidence, such as tone of voice, or gestures or posture, can be an unreliable clue to truthfulness or untruthfulness, and thus distract a trier of fact from the cognitive content of a witness's testimony. See, e.g., Scott Rempell, "Gauging Credibility in Immigration Proceedings: Immaterial Inconsistencies, Demeanor, and the Rule of Reason," 25 *Georgetown Immigration Law Journal* 377 (2011); Max Minzner, "Detecting Lies Using Demeanor, Bias, and Context," 29 *Cardozo Law Review* 2557, 2566 (2008); Jeremy A. Blumenthal, "A Wipe of the Hands, A Lick of the Lips: The Validity of Demeanor Ev-

idence in Assessing Witness Credibility," 72 *Nebraska Law Review* 1157 (1993); Olin Guy Wellborn III, "Demeanor," 76 *Cornell Law Review* 1075 (1991).

There's still more that was wrong with the district court proceeding. Neither the government in its motion to show cause or at the hearing before the judge, nor the defendant or her lawyer, nor the judge himself, mentioned a statutory basis for adjudging the defendant guilty of willful and therefore criminal contempt. The government did state in the fine print of the "Designation Sheet" filed with the court that the prosecution was pursuant to 18 U.S.C. § 401 and 28 U.S.C. § 1866, but the designation sheet was not mailed to the defendant or the defendant's lawyer, nor referred to by the judge, who cited no statute during the hearing at which he convicted and sentenced the defendant.

18 U.S.C. § 401(3) punishes criminal contempt but requires proof of willfulness, which is absent in this case. See *United States v. Mottweiler*, *supra*, 82 F.3d at 771. The written judgment order (usually filled out by a clerk rather than the judge) bases the defendant's conviction on 28 U.S.C. § 1866(g), which provides that "any person who fails to show good cause for noncompliance with a summons [for jury duty] may be fined not more than $1,000, imprisoned not more than three days, ordered to perform community service, or any combination thereof." The statute does not mention willfulness and there is no appellate authority on whether a $250 fine would be considered a civil or a criminal penalty for a violation of that statute. Conceivably the judge thought he was basing his sentence not on a statute but on inherent judicial authority to punish for contempt, see, e.g., *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798–99

(1987), but he gave no hint of that. The essential point is that the judge thought he was sentencing the defendant for criminal conduct (the judgment order is captioned "Judgment in a Criminal Case"), and there was a failure of proof of such conduct beyond a reasonable doubt.

A final point: during the brief hearing the judge seven times addressed the defendant by her first name. Calling a witness, let alone a testifying criminal defendant, by his or her first name is not proper conduct for a judge.

This litigation has been mishandled by both the district court and the Justice Department, which should not be defending the judgment. The judgment is reversed and the case remanded with instructions to enter a judgment of acquittal. The $250 fine that the defendant has paid must be refunded to her forthwith.